[Civ. No. 13670. Third Dist. May 4, 1973.]

CALIFORNIA STATE EMPLOYEES' ASSOCIATION et al.,
Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Mohi, Morales, Dumas & Glasman, Mohi, Morales & Glasman, Walter W. Taylor and Frank C. Morales for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Anthony S. DaVigo, Deputy Attorney General, Thomas J. Cunningham and John E. Landon for Defendants and Respondents.

**OPINION**

**REGAN, J.**—Plaintiffs California State Employees' Association, et al., filed two separate actions for declaratory relief and writs of mandamus on behalf of all of the employees of the state whose salaries or wages are established either by the State Personnel Board, the Trustees of the California State Colleges (now the Trustees of the California State University and Colleges), or the Regents of the University of California. For purposes of trial and pretrial proceedings the two matters were consolidated.

The complaints for declaratory relief asked the court to interpret and declare plaintiffs' rights with regard to the standard by which their salaries should be established and adjusted. The petitions for writ of mandamus asked that defendants be directed to adjust the salaries and wages of each person in their employ "found by them in their establishment of salaries and wages to be receiving less than the prevailing salary or wage . . . at least equal to the salary or wage being paid in outside employment."

Defendant regents interposed a motion for judgment on the pleadings. The other defendants demurred to the alleged causes of action applicable to them.

Seven defendants were designated by name in these two actions—the State of California, the Governor, the Legislature, the State Personnel Board, the Trustees of the California State Colleges, the Regents of the University of California, and the State Controller.

In complaint and petition No. 203440, plaintiffs seek to compel the payment of wage increases to state civil service employees and employees (academic and nonacademic) of the California State Colleges and of the University of California for the fiscal year 1969-1970.

In complaint and petition No. 203622, plaintiffs seek to compel the payment of wage increases to state civil service employees and the non-

academic employees of the California State Colleges and of the University of California for the fiscal year 1970-1971.

After the trial court ruled in favor of defendants this appeal followed.[1]

Section 18850 of the Government Code provides: "The [State Personnel] board shall establish and adjust salary ranges for each class of position in the state civil service. The salary range shall be based on the principle that like salaries shall be paid for comparable duties and responsibilities. In establishing or changing such ranges consideration shall be given to the prevailing rates for comparable service in other public employment and in private business. The board shall make no adjustments which require expenditures in excess of existing appropriations which may be used for salary increase purposes. The board may make a change in salary range retroactive to the date of application for such change."[2]

Section 22607 of the Education Code provides, in part: "The trustees [of the California State University and Colleges] shall establish and adjust the salaries and classifications of all academic, nonacademic, and administrative positions and neither Section 18004 of the Government Code nor any other provision of law requiring approval by a state officer or agency for such salaries or classifications shall be applicable thereto. In establishing and adjusting such salaries, consideration shall be given to the maintenance of the state colleges in a competitive position in the recruitment and retention of qualified personnel in relation to other educational institutions,

---

[1]No judgment of dismissal was ever entered on the demurrers interposed by the defendants (other than the regents who were granted a judgment on the pleadings in their favor). The appeal of these defendants is from the orders sustaining the demurrers without leave to amend. Such orders, of course, are non-appealable. (*Beazell* v. *Schrader* (1962) 205 Cal.App.2d 673, 674 [23 Cal.Rptr. 189].) However, neither party has raised the point. In fact, both parties have acted as though the appeal were perfectly proper. In the interests of justice and to prevent unnecessary delay, we will deem the orders to incorporate judgments of dismissal and will interpret petitioners' notice of appeal as applying to the dismissal. Accordingly, the orders sustaining the demurrers without leave to amend are modified by adding thereto a paragraph to each order dismissing the actions. (*Beazell* v. *Schrader* (1963) 59 Cal.2d 577, 579-580 [30 Cal.Rptr. 534, 381 P.2d 390]; *Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517, 524 [322 P.2d 933]; see also *Daggs* v. *Personnel Commission* (1969) 1 Cal.App.3d 925, 930 [82 Cal.Rptr. 157]; in general, see 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 336 and 337, pp. 4313-4316.)

[2]The phrase "like salaries shall be paid for comparable duties and responsibilities" has no bearing on this case for that phrase refers to internal consistency. (Cf. *Monahan* v. *Dept. of Water & Power* (1941) 48 Cal.App.2d 746, 752 [120 P.2d 730].) The succeeding phrase does establish an external standard commonly known as the "prevailing wage" doctrine. (See *Walker* v. *County of Los Angeles* (1961) 55 Cal.2d 626, 633-634 [12 Cal.Rptr. 671, 361 P.2d 247].) All this phrase means, however, is that the salary-setting agencies shall take into "consideration" the prevailing wage in other public and private employment.

private industry or public jurisdictions which are employing personnel with similar duties and responsibilities. The establishment and adjustment of salaries for nonacademic employees shall be in accordance with the standards prescribed in Section 18850 of the Government Code. The trustees, however, shall make no adjustments which require expenditures in excess of existing appropriations available for the payment of salaries."

Based upon these two code sections, plaintiffs' argument appears to be as follows: The exclusive power to establish the salaries and wages of civil service and state college employees is reposed in the Legislature. (See *People* v. *Coleman* (1854) 4 Cal. 46, 49.) By virtue of the enactment of the two foregoing statutes, the Legislature effectively delegated the duty to the State Personnel Board and the college trustees to establish the salaries and wages of the state employees within their respective jurisdiction. (Gov. Code, § 18850; Ed. Code, § 22607, see also Cal. Const., art. XXIV [State Civil Service].) The standards for establishing salaries in these two statutes impose mandatory duties upon the State Personnel Board and the college trustees.[3] Thus, the Legislature may not arbitrarily withhold funds to pay increases in salaries established to be due. Nor is the Governor a part of the salary-fixing process, and therefore his veto of a salary appropriation by the Legislature to meet the obligation for prevailing salary increases "created" by the personnel board and the college trustees is a nullity. Finally, plaintiffs contend the board and the trustees must adjust the salaries and wages of the employees by providing increases to at least the extent that funds are appropriated.[4]

█ Plaintiffs' contentions must fail. Their entire argument is nothing more than a thinly disguised attempt to circumvent pertinent provisions of our state Constitution. Regardless of what standard is to be applied by the salary-fixing agencies, the constitutional power of the Legislature and the Governor cannot thereby be curtailed or limited.

Section 21 of article XIII of our Constitution provides, in part, that "No money shall be drawn from the Treasury but in consequence of appropriation made by law . . . ." It has long been established that "the power

---

[3]At this juncture we note that plaintiffs are not contending that consideration was *not* given to an external standard. Rather, they appear to be arguing that the board and the trustees are the *sole* arbiters of the amount of salaries and wages to be paid to their respective employees.

[4]Plaintiffs are rather vague in how the gap should be bridged between the establishment of salary increases and the source of funds to be utilized therefor. They state: "The State Personnel Board and the College Trustees must pay out all monies available to it for salary increases, and it must pay out those monies to those that prevail in outside employment. Then, and only then, can the State Personnel Board and the College Trustees use any available monies to pay other employees for purposes of retention or recruitment."

to collect and appropriate the revenue of the State is one peculiarly within the discretion of the Legislature." (*Myers* v. *English* (1858) 9 Cal. 341, 349; see Cal. Const., art. IV, § 1.) The Legislature may not divest itself of its constitutionally granted powers. (*Slavich* v. *Walsh* (1947) 82 Cal. App.2d 228, 235 [186 P.2d 35].) Further, the Governor has exclusive discretion to sign or veto bills passed by the Legislature. (Cal. Const., art. IV, § 10, subd. (a).) He also has the power to "reduce or eliminate one or more items of appropriation . . . ." (Cal. Const., art. IV, § 10, subd. (b).) Thus, plaintiffs' contention that the Legislature "effectively delegated" its constitutional power to fix salaries to the State Personnel Board and the college trustees, thereby divesting itself of its inherent authority to limit or restrict appropriations therefor, is without merit. And, of course, the Legislature could not curb the Governor's constitutional right of the veto power.

A careful reading of the statutes also shows that the Legislature expressly placed limitations on the delegation of authority. They read, in part as follows: "The board shall make no adjustments which require expenditures in excess of existing appropriations which may be used for salary increase purposes." (Gov. Code, § 18850.) "The trustees, however, shall make no adjustments which require expenditures in excess of existing appropriations available for the payment of salaries." (Ed. Code, § 22607.) Finally, and in this connection, section 9610 of the Government Code provides: "The fixing or authorizing the fixing of the salary of a State officer or employee by statute is not intended to and does not constitute an appropriation of money for the payment of the salary. The salary shall be paid only in the event that moneys are made available therefor by another provision of law."

In any event, the courts have no authority to compel a separate and equal branch of state government to make appropriation of funds. At the time of the filing of this action, section 1 of article III of the state Constitution provided: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."[5] As stated in *Myers* v. *English, supra,* 9 Cal. at page 349: "We think the power to collect and appropriate the revenue of the State is one peculiarly within the discretion of the Legislature. It is a very delicate and responsible

---

[5]The Constitution confers no authority upon the judicial branch to make appropriations. (See Cal. Const., art. VI.) The trial court in its memorandum of intended decision put the matter thusly: "The concepts of division of powers and checks and balances are deeply rooted in the California Constitution, and the commanding of a specific legislative action is beyond the power of the courts for it would violate the principles of division of powers of the three governmental departments."

trust, and if not used properly by the Legislature at one session, the people will be certain to send to the next more discreet and faithful servants.

"It is within the legitimate power of the judiciary, to declare the *action* of the Legislature unconstitutional, where that action exceeds the limits of the supreme law; but the Courts have no means, and no power, to avoid the effects of *non-action*. The Legislature being the creative element in the system, its action cannot be quickened by the other departments. Therefore, when the Legislature fails to make an appropriation, we cannot remedy that evil. It is a discretion specially confided by the Constitution to the body possessing the power of taxation. There may arise exigencies, in the progress of human affairs, when the first moneys in the treasury would be required for more pressing emergencies, and when it would be absolutely necessary to delay the ordinary appropriations for salaries. We must trust to the good faith and integrity of all the departments. Power must be placed somewhere, and confidence reposed in some one." (Original italics.) (See also *City Council* v. *Superior Court* (1960) 179 Cal.App.2d 389, 394-395 [3 Cal.Rptr. 796].)

Further, the signing or vetoing of bills are acts inherently executive or political in nature, and the courts will not interfere with their performance since they require the exercise of judgment or discretion. (*Jenkins* v. *Knight* (1956) 46 Cal.2d 220, 223 [293 P.2d 6].)

Plaintiffs make similar contentions with regard to the Regents of the University of California. Plaintiffs first note that the regents are in a different position from that of the board of trustees. They contend the University of California through its board of regents derives its salary-fixing authority from section 9 of article IX of the state Constitution, which provides, in part, as follows: "The University of California shall constitute a public trust, to be administered by the existing corporation known as 'The Regents of the University of California,' with full powers of organization and government, subject only to such legislative control as may be necessary to insure compliance with the terms of the endowments of the university and the security of its funds."

The university is a constitutional department or function of the state government, and the regents have the general rule-making or policy-making power in regard to the university and are (with certain exceptions) fully empowered with respect to the organization and government of the university. (*Goldberg* v. *Regents of the University of California* (1967) 248 Cal.App.2d 867, 874 [57 Cal.Rptr. 463].)[6] However, the Constitution

---

[6]As the trial court noted, these powers relate to "the *internal government* of the University."

confers no authority upon the regents, independent of legislative appropriation, to bind the state treasury for additional funds to meet recommended salary increases. It is clear the Legislature retains the exclusive authority to assess, collect, and appropriate the revenues of the state. (*Myers v. English, supra.*) Therefore, plaintiffs' contentions as regards the regents must also fail.[7]

Plaintiffs also sought to have the superior court make declarations to the effect that:

(1) The regents have the exclusive power and duty to establish and adjust the salaries of university personnel;

(2) Neither the Legislature nor the Governor may play any part in that process; and

(3) Neither the Legislature nor the Governor may arbitrarily or capriciously withhold from the regents the funds necessary to pay university employees' salaries in the amounts fixed by the regents.[8]

In the exercise of its discretion the court declined to answer these questions on the ground that each of those issues had become academic or moot.

We conclude that the court acted properly in declining to address itself to these peripheral issues. Section 1061 of the Code of Civil Procedure expressly provides: "The court may refuse to exercise the power granted by this chapter [re declaratory relief] in any case where its declaration or determination is not necessary or proper at the time under all the circumstances."

The court in *Burke* v. *City etc. of San Francisco* (1968) 258 Cal.App.2d 32, 34 [65 Cal.Rptr. 539], recognized this authority: "But there are limits to the availability of the remedy. It will not lie to determine a matter which is or has become moot [citation]. Nor is resort to it warranted when '[t]here is no more than a conjecture or supposition . . . that at some time in the future a controversy may arise . . . .' [Citation.] The controversy must

---

[7]In their brief, the regents also contend that mandamus does not lie because the complaints and petitions fail to allege facts which show that the regents (as distinguished from the board of trustees) have a clear and present legal duty to establish or adjust the salaries of university personnel in accordance with the present rates of salaries being paid for comparable services in private or public employments. Although the regents have in the past adopted similar salary policies or standards, plaintiffs point to no constitutional or statutory provision requiring them to do so. Thus this contention has merit (see *Times-Mirror Co.* v. *Superior Court* (1935) 3 Cal.2d 309, 327 [44 P.2d 547]), and is an additional reason for affirming the judgment in favor of the regents.

[8]Similar declarations were sought as to the State Personnel Board and the college trustees.

be justiciable, as distinguished from a difference or dispute of a hypothetical or abstract character, and it must be definite, concrete and of a character which admits of specific and conclusive relief by judgment [citations]."

In view of the conclusion we have reached herein, there was no necessity for the trial court to reach these issues.

The judgments are affirmed.

Friedman, Acting P. J., and Janes, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 28, 1973.