[Civ. No. 3192. Fifth Dist. June 8, 1978.]

LARRY C. NYSTROM, Plaintiff and Appellant, v.
FIRST NATIONAL BANK OF FRESNO, Defendant and Respondent.

**COUNSEL**

Richardson & Gaskill and Vincent J. McGraw for Plaintiff and Appellant.

McCormick, Barstow, Sheppard, Coyle & Wayte and James H. Perkins for Defendant and Respondent.

OPINION

NAIRN, J.*—

STATEMENT OF THE CASE

This is an appeal by the plaintiff from a summary judgment granted to the defendant in an action for damages for breach of contract. Both sides moved for summary judgment promptly after the case was at issue. Both agreed that the legality or illegality of the letter agreement (see Appendix A, *post,* at p. 769) was a matter of law and not of fact. The trial court granted defendant's motion for summary judgment, ruling that the agreement sued on was illegal and unenforceable. Plaintiff's appeal followed.

The record on appeal consists of a clerk's transcript and a reporter's transcript of the hearing of the motions for summary judgment.

The notice of appeal specifies that the appeal is "from the Order (on Motion and Counter-Motion for Summary Judgment) entered by the court on September 30, 1976. . . ." The order referred to is a formal order granting defendant's motion for summary judgment and denying plaintiff's motion for summary judgment, but it includes the following sentence which may serve to give it the status of a judgment: "Defendant shall have Judgment against Plaintiff as prayed together with its costs of suit." ▮ An order granting a motion for summary judgment is a nonappealable preliminary order. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 59, pp. 4074-4075.) A summary judgment itself is of course appealable. (Code Civ. Proc., § 437c.) ▮ It does not appear that any judgment other than the order dated September 30, 1976, has been entered. The case is similar in this respect to *California State Employees' Assn.* v. *State of California* (1973) 32 Cal.App.3d 103 [108 Cal.Rptr. 60], where the court set matters straight in a preliminary footnote as follows: "No judgment of dismissal was ever entered on the demurrers interposed by the defendants . . . . The appeal of these defendants is from the orders sustaining the demurrers without leave to amend. Such orders, of course, are nonappealable. [Citation.] However, neither party has raised the point. In fact, both parties have acted as though the appeal were perfectly proper. In the interests of justice and to prevent unnecessary delay, we will deem the orders to incorporate judgments of dismissal and will

*Assigned by the Chairperson of the Judicial Council.

interpret petitioners' notice of appeal as applying to the dismissal. Accordingly, the orders sustaining the demurrers without leave to amend are modified by adding thereto a paragraph to each order dismissing the actions. [Citations, including 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 336 and 337, pp. 4313-4316.]" (*California State Employees' Assn.* v. *State of California, supra,* 32 Cal.App.3d at p. 106, fn. 1.) In accordance with the above authority and in the interests of judicial economy, we treat the trial court's order entered September 30, 1976, as a judgment.

■ An order denying a motion for summary judgment is nonappealable. (*Stanton* v. *Andrews* (1959) 170 Cal.App.2d 269, 270 [338 P.2d 529]; *Nevada Constructors* v. *Mariposa etc. Dist.* (1952) 114 Cal.App.2d 816, 818 [251 P.2d 53].) Insofar as appellant has attempted here to appeal from the order denying his motion for summary judgment, the appeal will be dismissed.

## STATEMENT OF THE FACTS

A loan made by respondent on a certain apartment property being in default, respondent took possession of the property and began foreclosure proceedings. Respondent then entered into a letter agreement with appellant, a real estate broker, for appellant to act on behalf of respondent "to collect rents and/or obtain renters" for the property, for a fee of 5 percent of the rents collected, "payable when the property goes to Trustee's Sale or the default is cured." The agreement further provided that if respondent obtained a deed to the property as a result of a trustee's sale, the property would be listed for sale on an exclusive listing with plaintiff at 6 percent commission "for a minimum of ninety days."[1] According to a declaration of appellant, the letter agreement was written and signed after he had a conversation with an officer of respondent in which appellant stated that he would be willing to collect rents on behalf of respondent only if he could be assured of being the listed broker when and if respondent obtained title. Pursuant to the letter agreement, appellant "made frequent trips to the apartment building, talked to all of the tenants and made up rent schedules," and the rents he collected were remitted to respondent. Shortly after the letter agreement was signed, appellant was advised by an officer of respondent that the property was going to be "deeded back" to respondent and that appellant should find a buyer. Appellant submitted an offer for the property to respondent but it

---

[1] A typewritten copy of the letter agreement is attached to this opinion as Appendix A, *post,* at page 769.

was declined, appellant being told there had been a refusal by the persons in possession of the property to deliver the promised deed. The trustee's foreclosure sale was set for August 21, 1974. Respondent obtained title to the property by deed in lieu of foreclosure on or about July 30, 1974, and subsequently sold the property and paid commission to another broker without notifying appellant there had been any change in the arrangement with him. The lawsuit followed.

## Issues

I. Was the letter agreement between respondent and appellant illegal according to Business and Professions Code section 10176, subdivision (f), because it lacked a definite termination date?

II. Did the agreement that appellant would be given an exclusive listing of the property if respondent obtained a deed to the property "as a result of a Trustee's Sale" become inoperative when respondent acquired the property not as a result of a trustee's sale but by deed in lieu of foreclosure three weeks before the scheduled date of the trustee's sale?

## Discussion

I. *Was the agreement illegal under Business and Professions Code section 10176, subdivision (f)?*

Appellant's analysis of the letter agreement is that it is an agreement to collect rents and secure tenants for the apartments in the process of foreclosure and that as additional consideration for that contract, respondent agreed to give appellant an exclusive listing, and that the letter agreement itself was not an exclusive listing. Under such an interpretation, the starting date of the exclusive listing might be uncertain, but there was a definite termination date.

Respondent's contention is that the document itself was an exclusive listing and the termination date was, therefore, uncertain.

Section 10176 of the Business and Professions Code lists a number of acts which if committed by a real estate licensee may be grounds for suspension or revocation of his license. Subdivision (f) describes one of these forbidden acts in the following terms: "(f) Claiming, demanding, or receiving a fee, compensation or commission under any exclusive agreement authorizing or employing a licensee to perform any acts set

forth in Section 10131 for compensation or commission *where such agreement does not contain a definite, specified date of final and complete termination.*" (Italics added.) Section 10131 of the Business and Professions Code defines "real estate broker" and describes the main functions and activities of real estate brokers. Thus the effect of section 10176, subdivision (f), is to forbid a real estate broker to write an exclusive listing agreement with a property owner "where such agreement does not contain a definite, specified date of final and complete termination."

In *Dale* v. *Palmer* (1951) 106 Cal.App.2d 663 [235 P.2d 650], a real estate broker had a listing agreement with the developer of a residential subdivision which in effect gave the broker the exclusive right to sell every house in the subdivision until 30 days after the last notice of completion was filed for the development. Differences arose between the parties and the developer terminated the agreement. In the lawsuit which followed, the Court of Appeal held that the listing agreement lacked a definite, specified date of final and complete termination, contrary to section 10176, subdivision (f), and that the agreement, therefore, was illegal and unenforceable. It was not enough, the court said, that the agreement would terminate by a date which would become determinable at a later time. The trial court in the present case based its ruling squarely on the holding of *Dale*.

Appellant argues that a closer precedent on its facts than *Dale* v. *Palmer, supra,* 106 Cal.App.2d 663, is *Lowe* v. *Loyd* (1949) 93 Cal.App.2d 684 [209 P.2d 851], where an exclusive real estate listing agreement was upheld although it did not specify a termination date. The agreement there provided that it was "to continue in full force and effect for a period of 90 days from date hereof, and thereafter until revoked by me in writing, but to terminate automatically six months after end of listing period." Thus as the court saw it the agreement did indeed "contain a definite, specified date of final and complete termination" in that it would terminate no later than 90 days plus six months from the date of the agreement.

▇ The statute (Bus. & Prof. Code, § 10176, subd. (f)) expresses a public policy against open-ended exclusive real estate listing contracts. The Court of Appeal in *Wilson* v. *Stearns* (1954) 123 Cal.App.2d 472 [267 P.2d 59], quoted the following observation the trial judge had made in that case: " 'In enacting this section (Bus. & Prof. Code, § 10176), I think the evil which the legislature had in mind was the practice of some brokers to obtain contracts which placed themselves in a position to claim

commissions for an indefinite time without performing any services, nor, perhaps ever intending to.' " (*Wilson* v. *Stearns, supra,* 123 Cal.App.2d at pp. 478-479.) Besides being invariably disadvantageous to the property owner, open-ended exclusive listing contracts undoubtedly were seen as tending to promote disputes and lawsuits among parties affected and as generally being contrary to the legitimate interests of not only buyers and sellers of real estate but brokers as well. For instance, as long as a listing of this kind had not been cancelled by mutual agreement, the property owner could not employ another broker except at the risk of having to pay double commissions.

The court in *Dale* v. *Palmer, supra,* 106 Cal.App.2d 663, 666, saw the total agreement there as being indeed an open-ended exclusive listing of the type proscribed by the statute. The same cannot be fairly said of the agreement here. From a practical standpoint and no doubt in the minds of the parties, the listing provided for in the letter agreement here was going to begin, if it became effective at all, no later than the date of a trustee's sale that would occur, if at all, in the normal course of foreclosure proceedings then under way. There is nothing about the agreement which is offensive to the purposes of the statute. If the listing agreement ever became effective it would contain a definite, specified date of final and complete termination, as required by the statute.

II. *Did respondent's promise that appellant would be given an exclusive listing of the property if respondent obtained a deed to the property "as a result of a Trustee's Sale" become inoperative when respondent acquired the property not as a result of a trustee's sale but by deed in lieu of foreclosure?*

Respondent contends that the agreement that appellant should have an exclusive listing of the property never became operative because it was conditional upon an event that never occurred, namely respondent's obtaining a deed to the property "as a result of a Trustee's Sale." Appellant argues that the occurrence of the condition was rendered impossible by the optional alternative course respondent took, and therefore the nonoccurrence of the condition could not be asserted by respondent as an excuse for nonperformance of the agreement, citing *Carl* v. *Eade* (1927) 81 Cal.App. 356, 358 [253 P. 750]. Witkin states the general rule as follows: "A person cannot take advantage of his own act or omission to escape liability; if he *prevents or makes impossible* the performance or happening of a condition precedent, the condition is excused." (1 Witkin, Summary of Cal. Law (8th ed.) Contracts, § 591, p. 505, citing *Carl* v. *Eade, supra,* 81 Cal.App. 356, and many other cases.)

That respondent acquired title to the property by a deed in lieu of foreclosure instead of "as a result of a Trustee's Sale" could hardly make any difference to the parties and in the circumstances did not affect their rights and obligations under the agreement. Moreover, "[i]f the cooperation of the other party is necessary for successful performance of an obligation, a promise to *give that cooperation,* and *not to do anything which prevents* realization of the fruits of performance, will often be implied. This is sometimes referred to as an implied covenant of good faith and fair dealing:

■ " 'There is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract. . . . [T]his covenant not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose.' (*Harm* v. *Frasher* (1960) 181 C.A.2d 405, 417, . . .)" (1 Witkin, Summary of Cal. Law (8th ed.) Contracts, § 576, p. 493, and cases cited therein.)

■ Respondent argues further that the case is not within the general rule stated above but is covered by the exception that if the contract expressly allows the act which prevents performance of the condition, the promisee has no cause for complaint, since he has assumed that risk. (1 Witkin, Summary of Cal. Law (8th ed.) Contracts, § 591, p. 505.) Respondent cites the case of *Kline* v. *Johnson* (1953) 121 Cal.App.2d Supp. 851, 854 [263 P.2d 494], also cited by Witkin, as authority for the exception. *Kline* v. *Johnson, supra,* merely held, however, that a real estate broker's commission was not payable in the circumstances of the case, inasmuch as the sale did not go through and there had been no down payment from which a commission might have been paid. Respondent argues further that appellant assumed the risk that the condition would not occur, that is, that respondent would acquire title in some other way than as a result of a trustee's sale. These arguments of respondent never come to grips with the question whether it really made any difference to respondent, in respect of the agreement with appellant, that title to the property was acquired by deed in lieu of foreclosure instead of as a result of a trustee's sale. Respondent's reliance upon *Kline* v. *Johnson, supra,* 121 Cal.App.2d Supp. 851 is misplaced. The letter agreement provides in part that the 5 percent of the rents collected was payable when the property goes to trustee's sale or the default is cured. If

the default had, in fact, been cured the foreclosure would have been terminated, and by the express terms of the letter agreement appellant would have assumed that risk. Such is not the case here, however.

Respondent also contends that the letter agreement is unenforceable because there was a material failure of consideration for the promise of respondent to pay a 6 percent commission on the sale of the property, inasmuch as appellant performed no sales services. But this argument invites the obvious answer that respondent repudiated the agreement and made it impossible for appellant to perform the sales services that would have earned him the commission.

Both appellant and respondent raise other minor contentions which we need not answer in view of our determination that the appellant's position is correct and that the exclusive listing promised by respondent in the letter agreement, while possibly uncertain in its beginning date, had a definite termination date. Accordingly, we hold that the agreement was not illegal under Business and Professions Code section 10176, subdivision (f).

The judgment is reversed.

Appellant's attempted appeal from the denial of his motion for summary judgment is dismissed.

Appellant shall recover his costs on appeal.

Brown (G. A.), P. J., and Hopper, J., concurred.

## APPENDIX A

FIRST NATIONAL BANK OF FRESNO
1903 Fulton Street
Fresno, California 93721
(209) 486-2950

May 9, 1974

Mr. Larry C. Nystrom
1318 E. Shaw Avenue
Fresno, California 93710

Dear Mr. Nystrom:

This letter will serve as your authorization to act on behalf of First National Bank of Fresno to collect rents and/or obtain renters on property located at 5292 North 6th Street. This apartment complex consists of 14 units on which the First National Bank of Fresno holds a First Deed of Trust and under which Deed of Trust the bank has commenced foreclosure proceedings as of April 8, 1974.

As previously discussed with you by telephone, it is my understanding that your fee in connection with this service to the bank, is 5% of the rents collected, payable when the property goes to Trustee's Sale or the default is cured.

Please remit rent collections to First National Bank of Fresno, P. O. Box 2268, Fresno, California 93720, Attention R. J. Kilcoyne.

It is further agreed that if First National Bank of Fresno obtains a deed to the property as a result of a Trustee's Sale, the property will be listed for sale on an exclusive listing with Larry C. Nystrom at 6% commission for a minimum of ninety days.

If this arrangement is agreeable with you, please sign and return the enclosed duplicate of this letter.

Yours very truly,

/s/ R. J. Kilcoyne

R. J. Kilcoyne
Vice President
Senior Loan Officer

RJK/bs
Enclosures

ACKNOWLEDGMENT:

/s/ Larry C. Nystrom
Larry C. Nystrom