[No. B005694. Second Dist., Div. Three. Jan. 21, 1986.]

CITY OF LOS ANGELES, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
PAUL HUTCHERSON et al., Real Parties in Interest.

**COUNSEL**

Ira Reiner, City Attorney, John T. Neville, Senior Assistant City Attorney, Richard M. Helgeson, Assistant City Attorney, Michael K. Fox and Katherine J. Hamilton, Deputy City Attorneys, for Petitioner.

Greines, Martin, Stein & Richland, Alan G. Martin, Marken, Parsons & Anderson, David W. Parsons, Steven L. Anderson and Brent B. Danninger as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

La Follette, Johnson, Schroeter & De Hass, Louis H. De Hass, Dennis R. Spirgen, Winnikoff & Associates, Samuel Z. Winnikoff, Rhoads, Brown & Winnikoff, Richard L. Rhoads, and George P. Bowie for Real Parties in Interest.

**OPINION**

**KLEIN, P. J.**—This matter is being determined on transfer from the California Supreme Court, which following its opinion in *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159], directed this court to reconsider its opinion in *City of Los Angeles* v. *Superior Court* ▆ (Cal.App.).

Having done so, this court concludes, inter alia, that Code of Civil Procedure section 877.5[1] comports with both equal protection and due process.

However, the matter is remanded to the trial court to conduct an evidentiary hearing and to determine whether the proposed settlement agreement comports with the law as set forth in *Tech-Bilt*, because the *Tech-Bilt* criteria are factual in nature and thus within the province of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

In November 1978, Paul Hutcherson (Hutcherson) was involved in an automobile accident in which his car overturned. He was treated by the City of Los Angeles' (City) paramedics who transported him to Daniel Freeman Memorial Hospital (Hospital). There he was examined by Dr. Jerome Robinson (Robinson), an emergency room physician. Blood tests indicated a .184 alcohol level; he was therefore released to the City police who arrested him, and transported him to the City jail where he was booked.

His mother picked him up at the City jail and took him home. Because he was unable to move his lower extremities, his mother had Goodhew Ambulance Service (Goodhew) return him to the Hospital. At this second visit, a cervical spine subluxation was diagnosed and surgery was performed, but Hutcherson remained a paraplegic with some loss of use of his arms as well.

Hutcherson's first amended complaint, filed November 26, 1980, alleged medical negligence against the Hospital, Goodhew, Robinson and several Doe defendants. He also alleged negligence against the City in its handling, transportation, booking and confining of him. In addition, there was an allegation of battery against the City in its detention, arrest and custody of him.

A mandatory settlement conference was held in December 1983, without success. The parties thereafter retained then retired Los Angeles Superior Court Judge, Dickran Tevrizian, to oversee further settlement negotiations. Approximately four sessions took place. All parties, including the City, had representatives available at each of these sessions, but the City did not send the same attorney each time, and did not participate in the sessions during which the disputed settlement was worked out.

Hutcherson's initial demand was for $4 million. There was a renegotiation, and the tentative settlement package was reduced to $3 million. The

---

[1]Hereinafter, all code references are to the Code of Civil Procedure, unless otherwise indicated.

parties collectively could not amass this money, so eventually a guaranteed structured settlement agreement was worked out among the Hospital, Goodhew and Robinson (the settling defendants) valued at $1.9 million, which involved a cash payment of $750,000, and a loan for the purchase of an annuity which would pay Hutcherson $5,000 per month or more for life, with a 20-year minimum guarantee, and additional deferred periodic lump sum payments. The proposed agreement became a sliding scale agreement pursuant to section 877.5.

The proposed agreement further provided that if at trial the City obtained a defense verdict, the settling defendants would be liable to Hutcherson for the entire proposed settlement agreement. If Hutcherson won a verdict against the City with a present value of less than $1.9 million, the settling defendants would make up the difference. If, however, a verdict came in against the City in the amount of $1.9 million or more, the settling defendants would not be liable to pay the $750,000, and would be reimbursed for the purchase price of the annuity; in other words, they would pay nothing, and the City would be responsible for the entire verdict.

The City did not offer to contribute anything to the settlement package at the negotiation sessions, although the City's attorney did mention a $50,000 figure in a private discussion with Judge Tevrizian.

Once the sliding scale agreement was worked out, the settling defendants moved for a hearing on the good faith of the proposed agreement, as provided by section 877.6. After hearing testimony and oral argument by the parties, the trial court determined on May 7, 1984, that the settlement was in good faith.

The City then sought extraordinary relief to set aside the finding of good faith. The petition was denied because this court found section 877.5 constitutional and the sliding scale settlement agreement to be in good faith. The City thereafter sought review in the California Supreme Court, which granted hearing on November 21, 1984. Following the rendering of its opinion in *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d 488, the Supreme Court retransferred the matter to this court on July 18, 1985, "for consideration of whether and to what extent the principles enumerated in [*Tech-Bilt*] may be applicable to an agreement of this type."

### CONTENTIONS

The City contends: (1) the settlement was not in good faith, because there was no attorney for the City present at the session where the sliding scale agreement was worked out; (2) the City had been willing to look into a

$50,000 settlement offer; (3) the proposed agreement on its face was not in good faith, because there was a possibility that the settling defendants would pay nothing; and (4) if such a settlement is condoned by section 877.5, the section is unconstitutional in that it deprives the nonsettling defendant of equal protection and a fair trial.

The settling defendants counter that the City was uncooperative in settlement negotiations, that there was a real fear of a large verdict against all defendants at trial, and the City's intransigence made a sliding scale settlement a reasonable alternative, while still protecting Hutcherson's interests. They claim the Legislature recognized the utility of such sliding scale agreements by enacting section 877.5.

## DISCUSSION

*1. Section 877.5 is constitutional as it is rationally related to a legitimate state interest.*

The City argues section 877.5 is unconstitutional because it denies nonsettling defendants both equal protection of the law and the right to a fair trial under the due process clauses of the California and federal constitutions.

*a. Equal protection considerations.*

■ The City's equal protection argument is that the statutory scheme treats nonsettling defendants under a sliding scale agreement (§ 877.5) differently and to their detriment from nonsettling defendants under the release statute (§ 877).

Under section 877, subdivision (a), a nonsettling defendant is allowed to deduct any previous settlements from the ultimate verdict, whereas a nonsettling defendant under section 877.5 has nothing to deduct. The City contends such a legislative classification violates equal protection principles.

The recent case of *Riverside Steel Construction Co. v. William H. Simpson Construction Co.* (1985) 171 Cal.App.3d 781, 789-792 [217 Cal.Rptr. 569],[2] in addressing this very issue observed that no "suspect classification" or "fundamental right" being involved, the "rational relation" test was the appropriate one to apply in determining whether the classification was violative of equal protection. "In determining whether a statute passes the

---

[2]The Supreme Court granted review during the week of December 16, 1985. However, its order indicated the case remains published and citable.■

rational relation basis test for equal protection 'there is a presumption of constitutionality "requir[ing] merely . . . that . . . distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose." [Citation.]' [Citation.] The Legislature had wide discretion in enacting sections 877, 877.5, and 877.6, and any possible resulting classification that resulted from the enactment of those sections may only be overthrown by a clear affirmative showing that they were palpably arbitrary and beyond rational doubt, erroneous." (*Id.,* at p. 791, first set of brackets in original.)

*Riverside* thus held section 877.5 does not violate equal protection, even though nonsettling defendants under section 877 are permitted to reduce a judgment against them by the amount of a settlement, while under section 877.5, nonsettling defendants are prohibited from recovering any such set-off. *Riverside* found sliding scale recovery agreements rationally related to the state's legitimate interest in the disposition of cases, in that they tend to maximize recovery to injured plaintiffs, and encourage complete settlements, and that they do not defeat equitable apportionment of liability among joint or concurrent tortfeasors. (*Id.,* at pp. 789-792.)

We agree with the rationale of *Riverside* in this regard, and hold that any disparate treatment of nonsettling defendants vis-à-vis settling defendants and plaintiffs requires merely that the distinctions drawn by the statute bear some rational relationship to a conceivable legitimate state purpose. The disparate treatment accorded thereby is essential to the very nature of the sliding scale agreement.

b. *Due process considerations.*

The City argues section 877.5 deprives the nonsettling defendant of a right to a fair trial because the settling defendants can remain active in the litigation throughout the trial as witnesses or as nominal defendants, and can manipulate the presentation of evidence so as to obtain a verdict in excess of the guaranteed amount, thus placing the entire burden on the nonsettling defendant.

However, the City overlooks the fact that even in an ordinary negligence action where joint tortfeasors are involved, one defendant may attempt to minimize or evade liability by urging upon the fact finder that another joined defendant should be held solely liable or liable to a greater degree. Participating parties can and will present evidence as best serve their interest and protect the record in the process. A sliding scale settlement will not affect the nature, scope and direction of the evidence, since nothing

contemplated therein prevents any and all parties from introducing relevant evidence or making motions to limit evidence.

Nor is due process violated where a settling defendant cooperates with a plaintiff in producing evidence in a *nonsliding* scale situation.

■ The possibility of manipulation of evidence raised by the City admittedly was a matter of concern prior to the enactment of the instant statute because sliding scale agreements were often kept *secret* from both the court and the nonsettling defendant.[3]

The California Legislature, in apparent recognition of this problem, provided for mandatory disclosure in the statute to both the nonsettling defendant and the court, and discretionary disclosure to the jury. (§ 877.5, subd. (a)(2).)[4] A subsequent addition to the statutory scheme, section 877.6, further enables a *pretrial* hearing on the good faith of an agreement.

The protective standards of criminal proceedings as that body of law relates to accomplice testimony provide for further analogy. ■ No violation of due process occurs where a witness for the prosecution is a former accomplice of the defendant, even though such a witness may attempt to shift responsibility onto the former accomplice in order to escape, or at least to minimize, punishment. In such a case, the proper course is for the trial court to instruct the jury that the testimony of an accomplice ought to be viewed with distrust. (*People* v. *Cooper* (1970) 10 Cal.App.3d 96, 102 [88 Cal.Rptr. 919]; CALJIC No. 3.18 (4th ed. 1979).) ■ Calling the jury's attention to the tainted character of accomplice testimony, including motives of the accomplice in testifying for the state is thus deemed to be an adequate safeguard.

A cautionary instruction being sufficient in the criminal context, and with the safeguards written into the instant statute, the potential problems to a nonsettling defendant are not of constitutional proportions.

---

[3]The general characteristics of the so-called "Mary Carter" agreements are described in Note, *The Mary Carter Agreement—Solving the Problems of Collusive Settlements in Joint Tort Actions* (1974) 47 So. Cal. L. Rev. 1393, and the prejudicial effects of their secrecy are noted therein. (*Op. cit. supra,* at p. 1402.)

[4]Section 877.5, subdivision (a)(2) states: "If the action is tried before a jury, and a defendant party to the agreement is a witness, the court shall, upon motion of a party, disclose to the jury the existence and content of the agreement or covenant, unless the court finds that such disclosure will create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. [¶] The jury disclosure herein required shall be no more than necessary to be sure that the jury understands (1) the essential nature of the agreement, but not including the amount paid, or any contingency, and (2) the possibility that the agreement may bias the testimony of the alleged tortfeasor or tortfeasors who entered into the agreement."

Further, the City's bottom line due process concern is an economic one—the Legislature has interfered in the trial process, simultaneously limiting the liability of settling defendants, while increasing the exposure of nonsettling defendants.

Until 1957, California utilized the common law rule that there was no right by joint tortfeasors to apportion or allocate the plaintiff's damages among themselves. The rule was thus penal in nature, punishing the tortfeasors as "wrongdoers" by refusing to grant relief to them in adjusting losses among themselves. (*River Garden Farms, Inc.* v. *Superior Court* (1972) 26 Cal.App.3d 986, 993, fn. 5 [103 Cal.Rptr. 498].)

If the effect of a finding of good faith settlement is an imperfect allocation of liability, that is insufficient to give rise to a violation of due process in light of the fact that the pre-1957 scheme comported with constitutional guarantees.

In *Fein* v. *Permanente Medical Group* (1985) 38 Cal.3d 137 [211 Cal.Rptr. 368, 695 P.2d 665], our Supreme Court addressed a claim that Civil Code section 3333.2 denies due process because it limits the recovery of medical malpractice claimants to $250,000 in noneconomic damages. The *Fein* court stated, " '[i]t *is well established that a plaintiff has no vested property right in a particular measure of damages, and that the Legislature possesses broad authority to modify the scope and nature of such damages.* [Citations.] Since the demise of the substantive due process analysis of *Lochner* v. *New York* (1905) 198 U.S. 45 [49 L.Ed 937, 25 S.Ct. 539], it has been clear that the constitutionality of measures affecting such economic rights under the due process clause does not depend on a judicial assessment of the justifications for the legislation or of the wisdom or fairness of the enactment . . . . So long as the measure is rationally related to a legitimate state interest, policy determinations as to the need for, and the desirability of, the enactment are for the Legislature.' . . . [¶] . . . *[T]he Legislature retains broad control over the measure, as well as the timing, of damages that a defendant is obligated to pay and a plaintiff is entitled to receive,* and . . . the Legislature may expand or limit recoverable damages so long as its action is rationally related to a legitimate state interest." (*Id.,* at pp. 157-158, final italics ours.)

After setting forth the applicable due process standard of review, the *Fein* court upheld the statute as being rationally related to California's interest in reducing the cost of medical malpractice insurance. (*Id.,* at pp. 157-159.) The *Fein* court stated, "we know of no principle of California—or federal—constitutional law which prohibits the Legislature from limiting the recovery

of damages in a particular setting in order to further a legitimate state interest." (*Id.*, at p. 161.)

Similarly, *American Bank & Trust Co.* v. *Community Hospital* (1984) 36 Cal.3d 359, 368-369 [204 Cal.Rptr. 671, 683 P.2d 670, 41 A.L.R.4th 233], held section 667.7 does not violate due process because it too is rationally related to the state's legitimate interest in reducing insurance costs in the medical malpractice area. Section 667.7 provides for payments over a period of time rather than a lump sum payment at time of judgment when a plaintiff in a medical malpractice case has sustained "future damages" of $50,000 or more.

The instant statute differs from those challenged in *Fein* and *American Bank,* in that rather than restricting the recovery of plaintiffs, the Legislature has limited the liability of settling defendants, and expanded the potential liability of nonsettling defendants.

■ The applicable due process standard of review here is the rational relation test. ■ "Settlement agreements ' "are highly favored as productive of peace and goodwill in the community, and reducing the expense and persistency of litigation." ' " (*Stambaugh* v. *Superior Court* (1976) 62 Cal.App.3d 231, 236 [132 Cal.Rptr. 843].) ■ By cutting off cross-complaints against settling defendants and thereby encouraging settlement, the statute rationally furthers that interest. For that reason, as well as for the reasons set forth *ante* under the equal protection discussion, the statute meets the rational relation test.

By the same token, a contention by a nonsettling defendant that section 877.5 takes away the right to a fair trial, either before a judge or jury, or of any trial at all, on the issue of comparative fault, would be unpersuasive. All parties retain the right to try a case to a jury on all relevant issues and to a jury verdict. The proportionate share of responsibility will be decided by a jury. Nor is due process violated although a nonsettling defendant found only minimally liable by the jury may have to pay the entire judgment. The good faith determination of a proposed sliding scale agreement merely precludes equitable indemnity, which the statute clearly envisions.

Despite contentions the effect is to deprive the nonsettling defendant of the benefit of a jury verdict nearly exonerating it, the applicable due process standard of review is still the rational relation test, which is satisfied for the reasons discussed *ante.*

### 2. *Good faith considerations.*

■ The City argues the provision in the proposed agreement calling for settling defendants to be reimbursed for the purchase price of the annuity

in the event of a verdict in excess of $1.9 million, thereby placing the entire burden of the loss on the City, is per se not in good faith.

As indicated, the Supreme Court transferred this matter for consideration of *whether* and *to what extent Tech-Bilt* impinges on this case.

Regarding the applicability of *Tech-Bilt* to this fact situation, *Abbott Ford, Inc.* v. *Superior Court* (1985) 172 Cal.App.3d 675, 683 [218 Cal.Rptr. 605],[5] which came down in the interim, resolved that issue. ▆▆▆ The court therein held "[t]he same considerations apply to sliding scale agreements as to settlements involving joint tortfeasors generally, and the *Tech-Bilt* analysis is equally feasible when so applied." (*Ibid.*)

*Tech-Bilt* set forth numerous factors to be taken into account in determining *good faith.* These *include* a rough approximation of plaintiff's total recovery and the settlor's proportionate liability, the amount paid in settlement, the allocation of settlement proceeds among plaintiffs, a recognition that a settlor should pay less in settlement than if found liable after a trial, financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud or tortious conduct aimed at injuring the interests of nonsettling defendants. Also, a settling defendant's figure must not be so grossly disproportionate to what a reasonable person would estimate the settling defendant's liability to be at the time of the settlement. A lack of good faith will be shown if the settlement is so far "out of the ball park" in relation to these factors so as to defeat the statute's equitable objectives. (*Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates, supra,* 38 Cal.3d at pp. 499-500.)

However, bad faith is not established merely " 'by a showing that a settling defendant paid less than his theoretical proportionate or fair share.' " (*Id.,* at p. 499.) ▆▆ ▆▆ ▆▆ ▆▆ ▆▆ Because the determination of whether an agreement is in good faith requires the balancing of several factors, among which but one is the total value of the agreement, and not just focusing on the fact that the settling defendants did not commit to pay a *minimum unconditional amount* of money, the absence of such a commitment does not render a sliding scale agreement in bad faith as a matter of

---

[5]The Supreme Court granted review during the week of December 16, 1985. However, its order indicated the case remains published and citable.■

law. (*Riverside Steel Construction Co.* v. *William H. Simpson Construction Co., supra,* 171 Cal.App.3d at pp. 797-798.)[6]

■ Judge Tevrizian opined the proposed agreement was not "disproportionate to the fair share of the damages of the parties to the agreement given their respective liabilities."[7] Further, had the case gone to the jury, and had the jury returned a verdict in the City's favor, the settling defendants would be responsible for the total proposed settlement agreement valued at $1.9 million. Under these circumstances, we are not prepared to hold that the subject agreement is per se in bad faith merely because the settling defendants potentially would pay nothing. That possibility is *one factor* to be examined in arriving at a determination of good faith.

■ In *Abbott Ford, Inc.* v. *Superior Court, supra,* 172 Cal.App.3d at page 685, the court stated "[b]oth *Tech-Bilt* and *Riverside* recognize that establishing the criteria for 'good faith' settlements is factual in nature, suggesting that the trial court is the appropriate place to conduct fact-finding and make suitable determinations of 'good faith' or lack thereof."

■ Having reviewed the record, we conclude the trial court is in the best position to evaluate whether the settlement agreement comports with the requirements of *Tech-Bilt*. The litigants should be afforded the opportunity to present both factual matter and legal argument in support of their respective position on this point. The question of the good faith of the proposed agreement remains a question of fact for the trial court to resolve, consistent with the principles set forth in *Tech-Bilt*.

---

[6]While under the proposed agreement, the settling defendants did not commit themselves to pay a minimum unconditional amount of money, at oral argument counsel for the Hospital indicated the settling defendants have been paying, and will continue to pay, $5,000 monthly directly to Hutcherson, and have paid in excess of $90,000 to date. These payments are to continue until this litigation is concluded, and all appeals exhausted. The representation was that the payments are not being made as a loan, and Hutcherson will not be required to refund the amount paid, regardless of the outcome of the case against the City.

While *Tech-Bilt* does not require a minimum up-front payment, these subsequent developments will enter into the calculus of good faith.

Separately, Civil Code section 3333.2 limits to $250,000 the amount of noneconomic damages that may be awarded in an action against a health care provider based on professional negligence. Along similar lines, Code of Civil Procedure section 667.7 provides that where the award equals or exceeds $50,000 in future damages the award can be satisfied by periodic payments.

As indicated *ante,* the proposed agreement calls for a potential $750,000 up-front payment by the settling defendants. To the extent that either of these sections already limited the exposure of any of the settling defendants, that is an additional factor for the trial court to consider in its determination of good faith.

[7]Also, the City conceded at oral argument that $1.9 million was not a sum disproportionate to the settling defendants' potential share of liability.

## DISPOSITION

Let a peremptory writ of mandate issue compelling respondent court to set aside its decision of May 7, 1984, in which it found the subject settlement to be in good faith, and thereafter to conduct a new hearing, on proper notice to all parties and giving each litigant an opportunity to present its factual and legal position, to determine whether the subject settlement agreement comports with the requirements of *Tech-Bilt*.

Lui, J., and Danielson, J., concurred.