[No. B034291. Second Dist., Div. One. Feb. 28, 1989.]

HOWARD GITLEN & ASSOCIATES, INC., Plaintiff and Appellant,
v.
PARVIZ AMERI et al., Defendants and Respondents.

COUNSEL

Gordon P. Gitlen for Plaintiff and Appellant.

Newton & Newton and Leslie A. Newton for Defendants and Respondents.

OPINION

HANSON, J.—

## INTRODUCTION

Plaintiff Howard Gitlen & Associates, Inc., appeals the trial court's judgment in favor of defendants Parviz Ameri and Wendy Ameri on a com-

plaint filed January 28, 1985, for breach of contract, account stated, common counts for money due and owing and for money due for services, and for fraud.

The record on appeal includes neither a trial transcript nor a statement of decision. After a nonjury trial, Judge Laurence J. Rittenband found in favor of the defendants, and stated that plaintiff was not entitled to any damages, nominal or otherwise. The judgment after trial was filed on January 29, 1988. In an order filed on March 14, 1988, the trial court granted attorney's fees in the amount of $5,000 to defendants' attorney. The notice of appeal was filed on April 25, 1988.

## APPEALABILITY OF ORDER

California Rules of Court, rule 2(a) requires that a notice of appeal shall be filed within 60 days after mailing of the notice of entry of judgment by the court clerk, or within 60 days after service of written notice of entry of judgment by any party upon the party filing the notice of appeal, or within 180 days after the date of entry of the judgment, whichever is earliest.

Neither the record on appeal nor the superior court file contains any indication that the clerk of the superior court mailed notice of entry of judgment or that the plaintiff served written notice of entry of judgment upon defendant. Therefore the notice of appeal, filed within 180 days of the entry of judgment, is timely.

## FACTS

Defendants leased real property at 819 North Harbor Drive, Redondo Beach, which they operated as a restaurant, "Picasso's: A Bistro." Defendants listed their business for sale with plaintiff, a business broker, by a written "authorization to sell" dated September 6, 1984. This listing contract gave plaintiff the exclusive right to sell the business for 150 days, and if during that time a sale or exchange agreement was entered into, defendants were to pay plaintiff a commission of 10 percent of the selling price. The listing agreement set a sale price of $450,000, and described the property and other terms of sale.

After the listing agreement, defendants fell behind in their rent, and their landlord, Marina Cove, Ltd., commenced unlawful detainer proceedings against them. Marina Cove had also previously filed a complaint against defendants on November 7, 1983, for breach of a promissory note and for common counts for money lent and money paid.

During the trial of the unlawful detainer action, defendants and Marina Cove entered into a stipulation. It provided that, pursuant to a settlement agreement, the parties terminated the Picasso sublease, restored Marina Cove, Ltd. to possession of the Picasso premises, and settled and released all claims under both lawsuits. Marina Cove refunded to Picasso, Inc., $35,000 previously paid rent. The defendants left the Picasso premises and all improvements, fixtures and personal property in those premises, with the exception of dishes, liquor, food, certain Picasso prints, and two Persian carpets. All other fixtures, equipment and personal property on the Picasso premises would remain and become the property of Marina Cove, Ltd. Defendants also transferred liquor and other licenses necessary to operate "Picasso: A Bistro" to Marina Cove.

Plaintiff claims that the transaction as reflected in the stipulation entitled it to his 10 percent commission. Defendants claim that during the listing agreement's 11 weeks of existence, plaintiff produced no prospective purchaser and no offer to buy the business.

The trial court's judgment after trial found for the defendants, and concluded that plaintiff was not entitled to any damages.

## ISSUES

Plaintiff on appeal claims that the trial court erroneously found plaintiff was not entitled to a broker's commission because: 1. The agreement between defendants and Marina Cove, Ltd., constitutes a sale during the exclusive listing period; and because

2. Defendants' deprivation of plaintiff's opportunity to make a sale after plaintiff commenced performance created liability.

## DISCUSSION

■ Plaintiff claims that the agreement between defendants and Marina Cove, Ltd., constitutes a sale during the exclusive listing period. We conclude, however, that it did not.

■ The three types of brokerage listings are defined as follows. First, a general listing, revocable at the owner's will in good faith at any time before performance and regardless of the broker's efforts, leaves the owner free to list his property with other brokers, sell it himself, or withdraw it from the market. Second, an exclusive agency listing provides that for a stated period the owner will not deal through other brokers but may sell the property himself without liability. Third, an "exclusive right to sell" listing precludes

even the owner himself from selling the property during the contractual term without paying the brokerage commission. (*Seck* v. *Foulks* (1972) 25 Cal.App.3d 556, 570 [102 Cal.Rptr. 170].)

■ Plaintiff cites the rule that a listing agreement whereby the owner grants an agent, for a period of time, the exclusive right to sell property entitles the agent to the agreed compensation if a sale occurs during the time period, no matter who effectuated the sale. (Civ. Code, § 1086, subd. (e)(1); *Metzenbaum* v. *R.O.S. Associates* (1986) 188 Cal.App.3d 202, 210-211 [232 Cal.Rptr. 741].) Defendants do not dispute the validity of this rule to the "exclusive right to sell" listing agreement between themselves and plaintiff.

An agreement in settlement of litigation, however, is not a "sale" of the type contemplated by the exclusive right to sell listing agreement. Civil Code section 1086, subdivision (e)(1) defines "an exclusive right to sell" listing as one where the owner grants an agent the exclusive right "to sell or to find or obtain a buyer for the property. . . ." Subdivision (c) defines a "buyer" to include "a lessee in case of a lease"; subdivision (h) states that " '[s]old' includes leased and exchanged. A property is sold when a legally binding commitment to sell the property comes into existence."

■ The contents of a listing agreement, not its label, determine the parties' rights. (*Metzenbaum* v. *R.O.S. Associates, supra,* 188 Cal.App.3d 202, 210, fn. 1.) Any right to compensation asserted by a real estate broker must arise from the four corners of the employment contract, which is strictly enforced according to its lawful terms. (*Blank* v. *Borden* (1974) 11 Cal.3d 963, 969 [115 Cal.Rptr. 31, 524 P.2d 127].)

■ In the case at bench, the plaintiff broker's employment contract, titled "Authorization to Sell," gave him the "exclusive and irrevocable right" to sell the defendants' business for a specified term. It further stated that "[i]f a sale or exchange is entered into while this agreement is in effect," the sellers would pay a commission to plaintiff broker. The contract also stated, in a section titled "Payment of Lease or Sale Commissions," that "commissions shall be due and payable on the execution of a lease by Owner and Tenant. All deposits and advance rent will be credited to the commission due." The listing agreement was signed by defendants as the "Owner."

This contract contemplated defendants' sale of their business to someone unknown to them. It could not have had reference to their landlord, Marina Cove, Ltd., because the sellers, as tenants of Marina Cove, Ltd., could not have executed a lease to their own landlord.

Defendant sellers' settlement of unlawful detainer proceedings and of a suit against them for breach of promissory note and common counts for money lent and money paid does not constitute the transaction contemplated by the listing agreement. Its language gave plaintiff the right to a commission only if "a sale or exchange is entered into." Settlement of litigation does not constitute entering into a sale or exchange.

Moreover, the listing itself established specific terms governing the sale of the property. The sellers promised not to sell the property except through the broker; the broker promised to procure a buyer to purchase the property at the terms set forth in the contract. (Compare the description of a listing contract for the sale of real estate in *Coldwell Banker & Co.* v. *Pepper Tree Office Center Associates* (1980) 106 Cal.App.3d 272, 278 [165 Cal.Rptr. 51].) A comparison of those contractual terms and the stipulation settling the litigation between the sellers and the landlord indicates that the settlement was neither equivalent nor comparable to the "sale" contemplated by the listing agreement.

■ An exclusive listing agreement is strictly construed against the broker who drafted it. (*Coleman* v. *Mora* (1968) 263 Cal.App.2d 137, 144 [69 Cal.Rptr. 166].) ■ We find the listing agreement did not entitle plaintiff to a commission in the event the property became involved in the settlement of litigation.

■ We are aware of the rule that under an exclusive listing agreement, a seller becomes liable for the broker's commission if the seller renders the broker's performance impossible. (*Metzenbaum* v. *R.O.S. Associates supra*, 188 Cal.App.3d 202, 210-211; *Nystrom* v. *First Nat. Bank of Fresno* (1978) 81 Cal.App.3d 759, 766-768 [146 Cal.Rptr. 711].) This is so even if the broker had not yet performed by procuring a purchaser during the listing period or could not show he was the procuring cause of the sale. (*Carlsen* v. *Zane* (1968) 261 Cal.App.2d 399, 402 [67 Cal.Rptr. 747].)

However, the cases following this rule to make the seller liable for breaching an exclusive listing contract have applied it in circumstances unlike that in the case at bench. (See, e.g., *Alderson* v. *Houston* (1908) 154 Cal. 1, 10 [96 P. 884]: seller's refusal to clear lots from street assessments, disabling himself from performance by suffering accrual of bond liens for street assessments, breached by preventing agents from performing their part of the contract; *Baumgartner* v. *Meek* (1954) 126 Cal.App.2d 505, 511-512 [272 P.2d 552]: seller withdrew property from sale in violation of exclusive listing for a fixed term; *Carlsen* v. *Zane, supra,* 261 Cal.App.2d 399, 401-402: owner, party to an exclusive right to sell contract, sold part of property to a personal friend; *Blank* v. *Borden, supra,* 11 Cal.3d 963, 968:

seller's statement to broker that his services were no longer wanted constituted withdrawal of property from sale; *Nystrom* v. *First Nat. Bank of Fresno, supra,* 81 Cal.App.3d 759, 766-767: seller agreed to list property exclusively with agent for 90 days after acquiring deed at impending trustee's sale, but acquired property by deed in lieu of foreclosure and sold it through another broker.)

These and similar cases applying this principle make it clear that settlement of litigation does not constitute an act by the seller reducing the property's value or withdrawing it from the market.

To so consider the settlement of litigation, and to uphold payment of the commission to plaintiff under the circumstances of the case at bench would have made it more expensive for the sellers to settle their litigation with their landlords. That result would contradict the public policy favoring settlement of litigation by the parties before trial. (*City of Los Angeles* v. *Superior Court* (1986) 176 Cal.App.3d 856, 866 [222 Cal.Rptr. 562]; *Woodard* v. *Southern Cal. Permenente Medical Group* (1985) 171 Cal.App.3d 656, 665 [217 Cal.Rptr. 514].)

We conclude that defendants' settlement of litigation did not constitute a sale, and affirm the trial court's judgment.

## DISPOSITION

We affirm the trial court's judgment.

Spencer, P. J., and Devich, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 18, 1989. Mosk, J., was of the opinion that the petition should be granted.