[No. D016019. Fourth Dist., Div. One. July 28, 1992.]

THOMAS F. EVERMAN et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
CITY OF ENCINITAS et al., Real Parties in Interest.

**Counsel**

Virginia R. Gilson, McInnis, Fitzgerald, Rees, Sharkey & McIntyre, William M. Low and Darin J. Boles for Petitioners.

No appearance for Respondent.

Daly & Heft, Robert R. Heft, Mitchell D. Dean, William D. Brown, Hammett & Whitson, Michael K. Newlee, Haasis, Pope & Correll, Susan J. Gill and William A. Calders for Real Parties in Interest.

## OPINION

TODD, J.—We are asked to decide whether the trial court abused its discretion in denying a motion for determination of good faith settlement under circumstances in which two of four defendants settle with the plaintiffs on condition one of the settling defendants remains in the lawsuit and participates at trial as a defendant. The court expressly disavowed as its bases for denying the motion that the settlement (1) was "not economically appropriate in that the assets of the settling defendants are not existent over and above their insurance proceeds," or (2) was collusive in the normal sense of the term. Instead, the court found the settlement was "collusive in the sense that it is not above board when you have a person who is insulated from further liability, who is fully settled, sitting in a case, in a sense taking a position on behalf of the plaintiff." In this proceeding the main thrust of the parties' arguments is upon the propriety of the trial court's determination as quoted immediately above, that is, its determination that the settlement meets the test set forth in *Tech-Built, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 499-500 [213 Cal.Rptr. 256, 698 P.2d 159], for what is a good faith settlement except for the condition that one of the settling defendants will stay in the case during the trial. We deal with the case on this basis.[1]

We deem the settlement in question to be consistent with the dual goals of section 877.6, encouraging an equitable allocation of costs among multiple tortfeasors and furthering the policy in favor of settlements. (*Tech-Built*, *supra*, 38 Cal.3d at pp. 498-499.) Doing so, we conclude the trial court's denial of the motion for determination of good faith settlement solely on the basis it stated is an abuse of discretion, and we grant the writ.

[1]The nonsettling defendants who support the trial court's denial of the motion make brief conclusional arguments to the effect that the amount of the settlement is inadequate under the factors set forth in *Tech-Built, supra,* 38 Cal.3d 488. Because these arguments do not demonstrate error in the trial court's determination that the amount of the settlement was adequate under the *Tech-Built* factors, we discuss this aspect no further. (See Code Civ. Proc., § 877.6, subd. (d), "The party asserting the lack of good faith shall have the burden of proof on that issue.")

All statutory references are to the Code of Civil Procedure unless otherwise specified.

## FACTS

On April 11, 1989, Mark Feest was seriously injured when the postal service jeep he was driving pulled into Rancho Santa Fe Road and was struck in the rear by a pickup truck driven by Warren Wade White and owned by White's employers, Thomas F. and Kathleen F. Everman, doing business as Equine Veterinarian Service (collectively Everman). The collision occurred near the intersection of 13th Street and Rancho Santa Fe Road. Both vehicles were driving southbound. White claims he was distracted when a northbound trash truck owned by Mashburn Sanitation Company and driven by one Bernales (collectively Mashburn) crossed over the center line of Rancho Santa Fe Road while attempting to make a right turn onto 13th Street about 500 feet from the point of impact. According to the City of Encinitas (City), Feest tested positive for cocaine on the day of the accident.[2]

Feest and his wife, Kathleen (collectively Feest), sued White, Everman, Mashburn, the City and others for damages for personal injury and loss of consortium. The complaint against the City was for designing and maintaining a dangerous condition of public property, the road, which was too narrow. The defendants filed indemnity cross-complaints against the other defendants.

After most of the discovery was completed, Feest entered proposed settlements with Everman and with White. The Feest-Everman settlement provides that Everman is to pay their insurance policy limits of $300,000 in exchange for a dismissal with prejudice. The $300,000 is paid for the release of Everman, "their agents, servants and employees save and except [White], of and from any and every claim, demand, right or cause of action, of whatsoever kind or nature, past, present or future, by reason of the automobile accident . . . including the alleged injuries to [Feest], and all such claims, whether herein enumerated or not, are finally and forever compromised and settled as to [Everman]." Everman apparently has inadequate assets to pay any judgment above the insurance policy limits. Although the language is not contained in the exhibit in this record, Everman represents and the parties do not contest that the Feest-Everman settlement is conditioned on its being adjudicated to be in good faith and that the $300,000 policy limit is also being paid on behalf of White as a driver of Everman's pickup truck.

The Feest-White settlement is in two documents: (1) an assignment to Feest of White's claim against his own insurer for refusing to defend and

---

[2]In its statement of facts, City makes no citation to the record for the assertion Feest tested positive for cocaine or, for that matter, for any other assertion of fact.

settle the Feest's action against White, and (2) Feest's covenant not to execute on any judgment Feest obtains against White. Part of the consideration for this agreement is the payment of the $300,000 Everman policy limit amount to Feest. The condition that White participate and be represented at the trial, only indirectly expressed in the agreement's provision that "[Feest] will retain the right to litigate the ACTION against WHITE to determine the amount of damages, if any, to which they are entitled against WHITE," was imposed by Feest's attorney in order to prevent the remaining defendants from making the "empty-chair" argument.

The parties point out that White's attorney, an independent counsel paid for by Everman's insurer, will be substituted out of the case and Everman's counsel will represent White in the trial.

The trial court denied Everman's motion, joined by White, for determination of good faith settlement on the bases that leaving White in the case is inconsistent with the concept underlying section 877.6 that a "settling defendant is then insulated from further litigation and is taken out of the lawsuit," and that although the settlement is economically appropriate there is collusiveness "in the sense that it is not above board when you have a person who is insulated from further liability, who is fully settled, sitting in a case, in a sense taking a position on behalf of the plaintiff."

After the trial court denied the motion, Everman petitioned this court for a writ of mandate. This court denied the petition. The Supreme Court granted review and transferred the matter to this court with directions to vacate the order denying the writ and to issue an alternative writ. The Supreme Court stayed all proceedings in the superior court pending further order of this court. We have issued an order to show cause, ordered a stay and received additional briefing.

### DISCUSSION

Everman contends that under principles of *Tech-Built, supra,* 38 Cal.3d 488, *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899], and *River Garden Farms, Inc.* v. *Superior Court* (1972) 26 Cal.App.3d 986 [103 Cal.Rptr. 494], the settlement condition that White is to remain in the case does not preclude a finding the settlement is in good faith. This condition is merely a matter of trial tactics depriving the remaining defendants of the trial tactic of using the empty chair to ascribe fault to an actor who is not present to defend himself. Everman maintains there is nothing unfair about eliminating this empty chair tactic available to the remaining defendants, there is no right to assert such a tactic and the

settling parties have no duty to preserve it. Everman recognizes that a settlement entered into only to take unfair advantage of a nonsettling defendant is collusive and not in good faith. However, Everman asserts the tactical requirement involved here, that a settling defendant participate in the trial, is neither an unfair tactic nor aimed at injuring the legitimate interests of the nonsettling parties.

City and Mashburn, on the other hand, emphasize the likelihood that the jury will not be advised of the settlement agreement and White's true status as a defendant facing no monetary liability. The trial court shared this concern. City describes this situation as "inherently collusive" and Mashburn uses labels such as "deceit and misrepresentation rising to collusion."

These concerns are allayed by Everman's statement in the reply brief that "any misconception or bias can be remedied by disclosure of the settlement and its terms" to the jury. Everman's discussion in the reply brief strongly suggests Everman would not object to the court's giving such an instruction. Everman clearly recognizes the discretionary authority of the court to so instruct the jury, citing *Moreno* v. *Sayre* (1984) 162 Cal.App.3d 116, 126 [208 Cal.Rptr. 444], which holds a settlement agreement is admissible to show bias or prejudice of an adverse witness. Contrary to Everman's argument, we do not rely on section 877.5 as furnishing authority to instruct the jury on the terms of the settlement agreement here since that section applies only to sliding scale recovery agreements, so-called Mary Carter agreements. However, *Pellet* v. *Sonotone Corp.* (1945) 26 Cal.2d 705, 713 [160 P.2d 783, 160 A.L.R. 863], also cited by Everman, recognizes the authority, if not the duty, of the court to instruct the jury under circumstances analogous to those found in this case. In *Pellet*, the settling defendant, Compton, received a covenant not to execute in exchange for his agreement to defend the action until the rendition of a verdict or a nonsuit. After disapproving a clause of the settlement agreement prohibiting filing the agreement in the action, *Pellet* states, in part: "While the trial court did not find, and we cannot hold as a matter of law, that there was any fraud or collusion in this case, such an agreement might lead to a fraud upon the court by concealing the position of a party who is an important witness in the action. In the present case, however, the court and the other parties were fully informed of the nature and contents of the agreement prior to the second trial, and the court or *jury could weigh the testimony of defendant Compton in the light of the knowledge that, since the agreement provided that a judgment could not be enforced against him, he was not a witness who was adverse to the plaintiff.*" (*Id.* at p. 713, italics added.)

A reasonable reading of this passage is that an agreement of the type we consider here is not collusive as a matter of law, but that the settling

defendant's position as a general rule should be revealed to the court and jury in the subsequent trial in order to avoid committing a fraud on the court. The disclosure permits the trier of fact to properly weigh the settling defendant's testimony.

In this connection, City and Mashburn argue that White is no longer involved in an actual controversy, that he will merely "perform" for the jury. We are of the view that while White may have no further interest in the outcome of the litigation, he is sufficiently interested in participating in the trial under his contractual obligation to do so under the settlement agreement. By participating in the trial, White avoids a breach of contract and loss of the benefits of the settlement. This gives White a genuine interest in the litigation. Moreover, White's participation in the trial as the immediate actor in the tragedy, rather than his absence from the trial, tends to facilitate the requirement of Civil Code section 1431.2, enacted by Proposition 51, that the comparative several liability of each defendant for noneconomic damages be allocated. We point out, too, there is a salutary economic benefit accruing to the insurer and premium ratepayers of eliminating the cost of trial counsel for one of the parties. (See *Schmid* v. *Superior Court* (1988) 205 Cal.App.3d 1244, 1249 [253 Cal.Rptr. 137].)

Mashburn argues that with White's participation in the trial the settlement does not finalize his position in the litigation, an ordinary goal and policy of settlements. Since the settlement is final, subject only to the condition of White's participation in the trial, we cannot accept Mashburn's argument. Mashburn acknowledges "[a]t first glance, the second objective of section 877.6 to encourage settlements, appears to be furthered by the proposed settlement." Mashburn proceeds to recognize the benefits of pretrial and prejudgment moneys Feest receives and the advantage to Feest, among other advantages, of having White remain in the action to aid in pursuing the comparative fault of the parties. No doubt, these advantages to the plaintiff as well as the obvious advantages to White and Everman tend to encourage settlement. In our view, the fact of White's participation in the trial after entering the settlement does not defeat or seriously impair the policy goal of finalizing one's involvement in the litigation. Certainly, White's participation involves no less finality than the participation under a sliding scale, Mary Carter agreement by a settling defendant who continues participation in the case, a practice which has been approved subject to application of the *Tech-Built* determination of whether there is a good faith settlement. (See

§ 877.5,[3] generally providing for disclosure to jury of fact witness is party to sliding scale settlement as is necessary to inform jury of the possibility the settlement may bias the witness's testimony; *Abbot Ford, Inc.* v. *Superior Court* (1987) 43 Cal.3d 858, 871, 872-875, 882-883, 885, 886-887 [239 Cal.Rptr. 626, 741 P.2d 124]; see also *Moreno* v. *Sayre, supra,* 162 Cal.App.3d 116, 126-127.)

We conclude a settlement such as the one before us that is otherwise within the good faith "ball park" under *Tech-Built* is not subject to disapproval solely because it provides for continuing participation in the trial of the lawsuit by a settling defendant. As a general rule, the possible bias of such a participating defendant should be disclosed to the jury as set forth in *Pellet* v. *Sonotone Corp., supra,* 26 Cal.2d 705, 713. (See also § 877.5.) Here, because the settling parties agree disclosure is appropriate, unless the defendants request otherwise, we see no reason why the court should not do so. Such disclosure of the agreement and its terms removes any potential unfairness in the proceedings. The trial court abused it discretion in denying the motion for good faith settlement on the basis alone that the settling defendant would continue to participate in the trial. We grant the petition.

---

[3]Section 877.5 reads as follows: "(a) Where an agreement or covenant is made which provides for a sliding scale recovery agreement between one or more, but not all, alleged defendant tortfeasors and the plaintiff or plaintiffs:

"(1) The parties entering into any such agreement or covenant shall promptly inform the court in which the action is pending of the existence of the agreement or covenant and its terms and provisions.

"(2) If the action is tried before a jury, and a defendant party to the agreement is called as a witness at trial, the court shall, upon motion of a party, disclose to the jury the existence and content of the agreement or covenant, unless the court finds that this disclosure will create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.

"The jury disclosure herein required shall be no more than necessary to inform the jury of the possibility that the agreement may bias the testimony of the witness.

"(b) As used in this section, a 'sliding scale recovery agreement' means an agreement or covenant between a plaintiff or plaintiffs and one or more, but not all, alleged tortfeasor defendants, which limits the liability of the agreeing tortfeasor defendants to an amount which is dependent upon the amount of recovery which the plaintiff is able to recover from the nonagreeing defendant or defendants. This includes, but is not limited to, agreements within the scope of Section 877, and agreements in the form of a loan from the agreeing tortfeasor defendant or defendants to the plaintiff or plaintiffs which is repayable in whole or in part from the recovery against the nonagreeing tortfeasor defendant or defendants.

"(c) No sliding scale recovery agreement is effective unless, at least 72 hours prior to entering into the agreement, a notice of intent to enter into an agreement has been served on all nonsignatory alleged defendant tortfeasors. However, upon a showing of good cause, the court or a judge thereof may allow a shorter time. The failure to comply with the notice requirements of this subdivision shall not constitute good cause to delay commencement of trial."

## DISPOSITION

The superior court is directed to vacate its order denying the motion for good faith settlement and to enter a different order granting the motion. The stay previously issued is vacated. Everman shall recover costs for the proceedings leading to this order.

Wiener, Acting P. J., and Nares, J., concurred.