[No. D026044. Fourth Dist., Div. One. Oct. 7, 1996.]

ALCALA COMPANY, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
UPTOWN DISTRICT HOMEOWNERS ASSOCIATION et al., Real
Parties in Interest.

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

COUNSEL

Gibbs, Eppsteiner & Stagg, Bonnie R. Stagg, McInnis, Fitzgerald, Rees & Sharkey, Ralph W. Peters, Stutz, Gallagher, Artiano, Shinoff & Holtz, Robert R. Templeton, Jr., Greco & Traficante, Peter J. Schulz, Howard, Moss, Loveder, Strickroth & Walker and Michael J. Strickroth for Petitioners.

No appearance for Respondent.

Lorber, Greenfield & Blick, Bruce W. Lorber, Robert G. Bernstein, Mower, Koeller, Nebeker, Carlson & Haluck, William A. Nebeker, Scott P. Cranny, Campbell, Rubino, Wolfenzon, Souhrada & Volk, John B. Campbell, Nannette Souhrada, Silldorf, Burdman, Duignan & Eisenberg, Howard J. Silldorf and Deborah M. Kornheiser for Real Parties in Interest.

OPINION

**KREMER, P. J.**—These proceedings arise out of a condominium construction defect suit. The homeowners association sued the developers and two general contractors which in turn filed cross-complaints against the subcontractors. The developers and one general contractor entered into a sliding scale or "Mary Carter" settlement agreement with the plaintiff which the trial court found to be in good faith. The court allowed the settling defendants to remain as defendants in the direct action brought by the association.

In this opinion, we address whether the trial court abused its discretion when it allowed the settling developers and general contractor to continue as defendants in the direct action. We conclude it did not. Rather, adequate disclosure of the settlement agreement and the true interests of the parties to the jury can adequately protect the interests of the nonsettling parties.

### BACKGROUND

Oliver McMillan/Odmark Partnership and related entities (OMOP) developed a 312-unit condominium project known as Uptown. Newmark Construction Company (Newmark) and Nielsen Construction Company (Nielsen) were general contractors. Alcala Company, Inc. (Alcala) was a subcontractor on the project.

Uptown District Homeowners Association (Uptown) filed a construction defect suit against the developers and the two general contractors. The

developers and general contractors filed cross-complaints for express and equitable indemnity against each other and various design professionals and subcontractors, including Alcala. The court deemed defendants and cross-defendants to have filed and served cross-complaints for implied and equitable indemnity. OMOP and Newmark (sometimes referred to as settling defendants) settled with some subcontractors but not with Nielsen or other subcontractors including Alcala.

OMOP and Newmark gave notice under Code of Civil Procedure[1] section 877.5 of their intent to enter into a sliding scale ("Mary Carter") recovery agreement with Uptown. Under the sliding scale agreement, OMOP's and Newmark's various insurance carriers are to pay Uptown $8 million. OMOP and Newmark are to make an initial payment of $3.5 million (up-front payment) and a later payment of $4.5 million (guarantee payment). The insurers are also to pay an additional amount of up to $150,000 in future Uptown expert fees.

The agreement provides for distribution of future moneys recovered from nonsettling parties by settling parties. The settling defendants and Uptown agree that proceeds from settlements with or judgments against nonsettling parties initially are to be distributed 80 percent to OMOP and Newmark and 20 percent to Uptown. Upon full satisfaction of the guarantee, additional recoveries will be distributed 80 percent to Uptown and 20 percent to OMOP and Newmark.

OMOP and Newmark moved for a good faith settlement determination under section 877.6.[2] The motion was opposed by Nielsen, Alcala and several other nonsettling subcontractors. OMOP and Newmark requested the court to allow them to remain as direct defendants in the Uptown's action.

The court found the settlement to be in good faith and barred any claims for equitable contribution or partial or comparative indemnity against OMOP and Newmark. It noted that the settlement resembled a sliding scale agreement as defined in section 877.5, subdivision (b) and found the value of the settlement to be at least $8 million. It further found that there was no collusion or fraud aimed at making the nonsettling parties pay more than their fair share. The court ordered Uptown to proceed to trial against OMOP

---

[1]All further statutory references are to the Code of Civil Procedure unless otherwise stated.

[2]About the time the good faith settlement motion was filed, Uptown also moved for leave to amend to assert direct actions against the nonsettling subcontractors. The trial court denied the motion as being untimely and prejudicial to the subcontractors. This court denied a petition for writ of mandate in *Uptown District Homeowners Assn.* (*Uptown District Homeowners Assn.* v. *Superior Court* (Apr. 24, 1996) D025823 [nonpub. opn.]). Uptown has now filed a separate action against the subcontractors.

and Newmark as well as against Nielsen on the direct action. It further ordered OMOP and Newmark in the same trial to proceed against the nonsettling cross-defendants on the cross-complaints for indemnity. The settling defendants' indemnity recovery against the nonsettling parties is capped by the amounts to be paid in settlement.

Alcala, joined by Nielsen and certain subcontractors,[3] petitions this court for a writ of mandate raising multiple issues with respect to the good faith nature of the settlement agreement and requesting this court to direct the trial court to vacate its order determining the settlement to be in good faith. Alcala additionally requests this court to issue a writ of mandate directing the trial court to vacate its order allowing Uptown to proceed against OMOP and Newmark as direct defendants and to enter a new order dismissing OMOP and Newmark from the direct action.

We issued an order to show cause why the relief requested should not be granted limited to that portion of the order allowing Uptown to proceed against OMOP and Newmark in the direct action. The parties responded to the order to show cause and we held oral argument.

DISCUSSION

I

*Statutory and Case Law*

"Mary Carter" or sliding scale settlement agreements are those in which the plaintiff settles with one or more, but not all, of the defendants and the amount the settling defendant ultimately owes the plaintiff is affected by the amount the plaintiff recovers against nonsettling defendants.[4] (§ 877.5, subds. (a) and (b); *Abbott Ford, Inc.* v. *Superior Court* (1987) 43 Cal.3d 858, 869, fn. 9 [239 Cal.Rptr. 626, 741 P.2d 124].) "Mary Carter" agreements historically have been secret and have required settling defendants to remain in the lawsuit. (See Note, *The Mary Carter Agreement—Solving the Problems of Collusive Settlements in Joint Tort Actions* (1974) 47 So.Cal.L.Rev. 1393, 1396.) Although such settlements have been criticized as unfair, the view in

---

[3]Subcontractors which have joined in the Alcala petition are T.B. Penick & Sons Inc., West Coast Sheet Metal, Inc., and Crown Door and Trim Company. Nielsen additionally filed a separate petition for writ of mandate which has been summarily denied. (See *Nielsen Construction Co.* v. *Superior Court*, (July 3, 1996) D026108 [nonpub. opn.].)

[4]In this case the agreement varies from the typical "Mary Carter" agreement in that OMOP and Newmark are required to pay $8 million without regard to Uptown's recovery against the nonsettling parties. However, the amount is in effect reduced by the settling defendants' share of their indemnity recovery and Uptown's direct action recovery against the subcontractors.

this state and the majority of jurisdictions is that the agreements are not per se invalid but must be judged by the terms and circumstances of each agreement. (*Abbott Ford, Inc.* v. *Superior Court, supra,* 43 Cal.3d at pp. 869-871.)

Sliding scale agreements are legislatively recognized in California in section 877.5. However, no sliding scale recovery is effective unless prior notice is given to nonsignatory defendants. (§ 877.5, subd. (c).) Also, the parties to the agreement must promptly inform the court of the agreement's terms and provisions. (§ 877.5, subd. (a)(1).) If a settling defendant is called as a witness in a jury trial, the court upon motion shall disclose to the jury the existence and content of the agreement. (§ 877.5, subd. (a)(2).) Disclosure shall be no more than is necessary to inform the jury of possible bias and the court may elect not to disclose the agreement if it finds disclosure would create undue prejudice, confuse the issues or mislead the jury. (*Ibid.*) Except with reference to being a witness, section 877.5 does not address to what extent or under what circumstances settling defendants are allowed to participate in a suit after settlement.

In *Everman* v. *Superior Court* (1992) 8 Cal.App.4th 466 [10 Cal.Rptr.2d 176] (*Everman*), however, this court held a trial court had abused its discretion when it denied a good faith settlement motion in a non-sliding scale settlement because the settlement required one of the settling defendants to remain in the lawsuit and participate at trial. In *Everman* the plaintiff was injured when his automobile was struck by an employer-owned vehicle being driven by an employee. The plaintiff sued the employer, the employee, a third motorist and the City of Encinitas, which had designed and maintained the road.

The plaintiff settled with the employer and the employee. Under the agreement with the employer, the employer paid policy limits on behalf of itself and its employee. (*Everman, supra,* 8 Cal.App.4th at p. 469.) The employee driver entered a second agreement which, inter alia, indirectly required him to participate in trial. (*Id.* at pp. 469-470.) The condition was imposed by the plaintiff to prevent the remaining defendants from making the "empty chair" argument. (*Id.* at p. 470.) The trial court denied a good faith settlement motion because it found the settlement collusive, noting that a person who had fully settled and was insulated from further liability would sit in the case taking a position on behalf of the plaintiff. (*Id.* at p. 468.)

Upon a petition for mandate, this court concluded that if a settlement is otherwise within the *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159] "ballpark," it is not subject

to disapproval solely because it provides for the continued participation in trial by the settling defendant. (*Everman, supra,* 8 Cal.App.4th at p. 473.) We further concluded that while participation at trial was not collusive as a matter of law, the settling defendant's position as a general rule should be revealed to the court and the jury to avoid committing a fraud. (*Id.* at pp. 471-472.) In doing so, we relied on *Pellett* v. *Sonotone Corp.* (1945) 26 Cal.2d 705 [160 P.2d 783, 160 A.L.R. 863] (*Pellett*) in which a defendant had received a covenant not to execute in exchange for his agreement to defend the action at trial. The *Pellett* court recognized the potential for fraud in concealing the agreement from the court and jury but stated that under the circumstances presented the court and other parties were fully informed. The court or jury could therefore weigh the settling defendant's testimony "in light of the knowledge that, since the agreement provided that a judgment could not be enforced against him, he was not a witness who was adverse to the plaintiff." (*Id.* at p. 713.)

In *City of Los Angeles* v. *Superior Court* (1986) 176 Cal.App.3d 856 [222 Cal.Rptr. 562] (*City of Los Angeles*) a driver with a .184 percent blood-alcohol level was injured in an automobile accident. The driver sued the City of Los Angeles (the City) and others alleging city paramedics, city police and several medical defendants involved in his treatment had exacerbated his injuries. The medical defendants and plaintiff entered into a sliding scale settlement valued at $1.9 million under which the settling defendants could ultimately pay nothing if plaintiff recovered in excess of $1.9 million from the City.

After the trial court determined the settlement to be in good faith, the City petitioned for a writ of mandate. It contended, inter alia, that section 877.5 was unconstitutional and deprived the nonsettling defendants of the right to a fair trial. The City argued the settling defendants could remain active in the litigation as witnesses and nominal defendants and could manipulate the presentation of the evidence to obtain a verdict in excess of the guaranteed amount placing the entire burden on the nonsettling defendants. (*City of Los Angeles, supra,* 176 Cal.App.3d at p. 863.)

The appellate court rejected the City's argument, stating:

"[E]ven in an ordinary negligence action where joint tortfeasors are involved, one defendant may attempt to minimize or evade liability by urging upon the fact finder that another joined defendant should be held solely liable or liable to a greater degree. Participating parties can and will present evidence as best serve their interest and protect the record in the process. A sliding scale settlement will not affect the nature, scope and direction of the evidence, since nothing contemplated therein prevents any

and all parties from introducing relevant evidence or making motions to limit evidence.

"Nor is due process violated where a settling defendant cooperates with a plaintiff in producing evidence in a *nonsliding* scale situation." (*City of Los Angeles, supra,* 176 Cal.App.3d at pp. 863-864, original italics.)

The court recognized that sliding scale agreements presented a danger of manipulation and stated that the Legislature apparently was aware of the problem when it provided for mandatory disclosure of such agreements to the court and nonsettling parties and discretionary disclosure to the jury. It further referred to accomplice testimony in criminal proceedings as not violating a defendant's due process rights despite the accomplice's motivation to shift responsibility and stated the proper course was to instruct the jury that such testimony ought to be viewed with distrust. (*City of Los Angeles, supra,* 176 Cal.App.3d at p. 864.)

The court stated that the due process concern was solely an economic one and that the Legislature historically had broad control over damage recovery. (*City of Los Angeles, supra,* 176 Cal.App.3d at pp. 865-866.) The applicable due process standard of review was the rational relation test which the court concluded had been met. (*Id.* at p. 866.) The court found section 877.5 did not take away the right to fair trial on the issue of comparative fault. Rather, "[a]ll parties retain the right to try a case to a jury on all relevant issues and to a jury verdict. The proportionate share of responsibility will be decided by a jury. Nor is due process violated although a nonsettling defendant found only minimally liable by the jury may have to pay the entire judgment. The good faith determination of a proposed sliding scale agreement merely precludes equitable indemnity, which the statute clearly envisions." (176 Cal.App.3d at p. 866.)

## II

### *Parties' Positions*

Alcala contends the trial court erred in allowing OMOP and Newmark to remain as defendants in the direct action because there is no justiciable controversy remaining between Uptown and the settling general contractor and developers. It further contends that the settling defendants' continuation as defendants in the direct action is collusive, fraudulent and injurious to the nonsettling cross-defendants, i.e., the settling defendants' and Uptown's interests are now aligned to maximize Uptown's recovery against the settling defendants so they may all ultimately share in a greater recovery against the nonsettling general contractor and nonsettling subcontractors.

OMOP and Newmark contend they retain a justiciable interest in the outcome of the direct action. They argue the agreement was not collusive

and that their continued participation does not deprive the nonsettling parties of their right to fair trial. Relying on the case law discussed above, OMOP and Newmark argue the court did not abuse its discretion when it found the settlement to be in good faith, including the agreement that the settling defendants participate in the trial of Uptown's direct action.[5]

### III

### *"Collusive" Nature of the Agreement*

Alcala acknowledges some courts have held that a defendant may remain in a trial after settling with a plaintiff, but argues there is no authority for a settling defendant to remain in the suit under the circumstances presented here. Alcala contends it is the derivative nature of OMOP and Newmark's claims against Alcala and other cross-defendants which makes this settlement collusive. The nonsettling subcontractors' liability is directly proportional to the settling defendants' liability to Uptown. Because OMOP and Newmark may recover through their indemnity actions and Uptown's direct actions against nonsettling parties, Alcala contends OMOP and Newmark, as direct defendants, will attempt to increase Uptown's recovery, thereby setting a higher ceiling for their own ultimate recovery. Alcala contends OMOP and Newmark will attempt to recover from cross-defendants more than they will ever have to pay Uptown—a notion contrary to the basic principles of indemnity.[6]

The typical "Mary Carter" agreement is secret, calls for the settling defendant to participate in the trial on the plaintiff's behalf, and provides for a settling defendant to be credited for amounts the plaintiff recovers from nonsettling defendants. (Note, *The Mary Carter Agreement—Solving the Problems of Collusive Settlements in Joint Tort Actions*, *supra*, 47 So.Cal.L.Rev. at pp. 1396-1397.) Its collusive nature and potential for fraud have been well documented and recognized. (See *id.*, at pp. 1398-1400.) The interests of the parties are clearly realigned in a manner not apparent to the trier of fact.

---

[5]The written settlement agreement provided to this court has no provision requiring OMOP and Newmark to remain as direct defendants. At the hearing below, however, counsel for OMOP stated that if Uptown could not proceed in the direct action against OMOP and Newmark there would be no settlement. In these writ proceedings, OMOP and Newmark's argument assumes their remaining as defendants in the direct action is a condition of the settlement agreement. While not specifically stated in the settlement agreement, the settling defendants' participation appears to have been anticipated by the settling parties when they entered into the agreement. We therefore treat the agreement that the settling defendants participate as direct defendants as a condition of the settlement agreement.

[6]What, if anything, the settling defendants may ultimately recover against the nonsettling parties will be determined after trial on the cross-complaints. That amount is dependent on the jury's verdict and trial court's rulings. Argument as to the impropriety of any recovery is premature.

To counteract any potential for misleading nonsettling parties, the court, or the jury, the California Legislature has mandated disclosure of sliding scale agreements. (§ 877.5, subds. (a) & (c).) By eliminating the secrecy of sliding scale agreements the Legislature has avoided the primary mischief that the fact finder will not understand the true alignment of the interests of the litigating parties and their witnesses. The Legislature did not prohibit settling defendants from continuing as parties in the case despite continued party status being a common practice. Allowing a settling defendant to remain in the suit does not per se deprive a nonsettling defendant of a fair trial. (*City of Los Angeles, supra,* 176 Cal.App.3d at pp. 863-866.)

Nor should the difference in the relationship between typical joint tortfeasor defendants and the relationship between the settling defendants and the cross-defendant subcontractors necessarily preclude OMOP and Newmark from participating in the trial as direct defendants. The situation presented here is more complicated than a settling joint tortfeasor being aligned with a plaintiff to maximize recovery against other joint tortfeasor defendants. (See *City of Los Angeles, supra,* 176 Cal.App.3d at pp. 863-864.) Here, the settling defendants' interest lies in maximizing the damages recovered against themselves so that they may ultimately recover more in their own indemnity actions and the plaintiff's direct actions against the nonsettling parties. The situation, however, is not beyond the understanding of the jury. With proper disclosure by the court of the terms of the settlement agreement and the relationship of the parties, the jury may be made aware of the realignment of the interests of the parties and the potential bias on the part of the settling defendants and their witnesses. The nonsettling parties, subject to the discretion of the court, can cross-examine witnesses and present argument to keep the jury informed of the relevant terms of the settlement and the resultant realignment of the parties.

Extensive discovery has been conducted in this case. Parties are well aware of positions taken by other parties and their experts. It would be difficult for the settling defendants to abandon their earlier positions to adopt those of the plaintiff. If they did, they would subject themselves and their expert witnesses to impeachment. Manipulation of the evidence would be difficult and could readily backfire with the jury. Moreover, should OMOP and Newmark pursue any course at trial that actually deprives the nonsettling parties of a fair hearing, their actions would be open to objection by the nonsettling parties and subject to control by the trial court. The trial conduct of the settling defendants is also subject to review by this court on appeal.

By allowing the settling defendants to remain in the direct action, all parties will introduce relevant evidence and make motions to limit evidence.

Full exposure of relevant evidence is to be expected. Armed with knowledge of the relevant settlement terms, the relationship of the parties and the alignment of the parties' interests, the jury will be in a position to consider the evidence presented and make reasoned determinations as to liability and damages. With adequate disclosure,[7] the nonsettling parties are not deprived of a fair trial.[8]

## IV

### *Justiciable Controversy*

"[A]n action not founded upon an actual controversy between the parties to it, and brought for the purpose of securing a determination of a point of law, is collusive, and will not be entertained . . . ." (*Golden Gate Bridge etc. Dist.* v. *Felt* (1931) 214 Cal. 308, 316 [5 P.2d 585].) Alcala argues that since the settlement agreement contains a Civil Code section 1542 waiver, there is no longer any actual controversy between the settling defendants and Uptown. It therefore contends OMOP and Newmark should be dismissed as direct defendants.

There is no question that an actual controversy existed between the settling defendants and Uptown before they settled. The settling parties as well as the nonsettling parties have been embroiled in extended discovery and litigation to determine the extent of and liability for purported construction defects. Justiciable controversies still exist; the jury must ultimately determine the extent of any damages and existence of any liability. What has changed are the interests of the settling defendants. Their interests are now aligned with the plaintiffs.

That settling parties are no longer involved in an actual controversy and their interests are no longer adverse, however, is not sufficient to preclude

---

[7]As an alternative to vacating the court's order and dismissing the settling defendants from the direct action, Alcala requests this court to direct the trial court to amend its order to require that the settlement agreement and all its terms be disclosed to the jury at the time of trial. What is ultimately disclosed to the jury is within the sound discretion of the trial court. At the hearing below, the trial court indicated there would be a need for disclosure should the settling defendants participate in the direct action. However, the court has not decided what is to be disclosed and what instructions will be given. That is a matter for the trial court to decide through *in limine* motions and evidentiary rulings. Any direction by this court would be premature.

[8]Alcala contends that disclosure is not sufficient to cure the collusive nature of the agreement. It specifically argues that if the jury is informed the court found the settlement was "in good faith," the "blessing" by the court could unfairly prejudice nonsettling parties' efforts to rebut a claim the settlement was reasonable. We agree, but fail to understand how the jury would learn of the trial court's "good faith" finding. The court will presumably allow only the disclosure of information which is relevant to show the relationship of the parties and potential bias.

settling defendants from participating in trial. (See *Everman, supra,* 8 Cal.App.4th at p. 472.) To the contrary, settling defendants regularly participate in trial with disclosure of their status to the fact finder. (See, e.g., *General Motors Corp.* v. *Lahocki* (1980) 286 Md. 714 [410 A.2d 1039, 1041-1047]; *Carter* v. *Tom's Truck Repair, Inc.* (Mo. 1993) 857 S.W.2d 172, 179; *Stockstill* v. *C.F. Industries, Inc.* (La.Ct.App. 1995) 665 So.2d 802, 812-813; *Texas Utilities Elec.* v. *Gold Kist* (Tex.Ct.App. 1991) 817 S.W.2d 749, 756-757 revd. on other grounds (Tex. 1992) 830 S.W.2d 91; see generally, Annot., Validity and Effect of "Mary Carter" or Similar Agreement Setting Maximum Liability of One Cotortfeasor and Providing for Reduction or Extinguishment Thereof Relative to Recovery Against Nonagreeing Cotortfeasor (1994) 22 A.L.R.5th 483.) If there is no prejudice to nonsettling parties, appellate courts have upheld settling defendants remaining as parties even without disclosure. (See, e.g., *Mackey* v. *Irisari* (1994) 191 W.Va. 355 [445 S.E.2d 742, 750-751]; *Reager* v. *Anderson* (1988) 179 W.Va. 691 [371 S.E.2d 619, 623, 629-630].)

OMOP and Newmark remain interested parties in the action. As long as the nature of their interest is fully disclosed to the jury, their presence at trial will facilitate full consideration of all relevant evidence and the determination of Uptown's damages. The nonsettling parties will have an opportunity to rebut the evidence presented. The court did not abuse its discretion by ordering Uptown to proceed to trial against OMOP and Newmark in the direct action.

DISPOSITION

The petition for writ of mandate is denied.

McDonald, J., and Huffman, J., concurred.