[No. A073262. First Dist., Div. Three. Nov. 25, 1996.]

BOBROW/THOMAS & ASSOCIATES, Petitioner, v.
THE SUPERIOR COURT OF DEL NORTE COUNTY, Respondent;
JOHN F. OTTO, INC. et al., Real Parties in Interest.

COUNSEL

Thelen, Marrin, Johnson & Bridges, Paul A. Bruno, Steven A. Ellenber and Scott D. Gattey for Petitioner.

No appearance for Respondent.

McDonough, Holland & Allen, David W. Post, Jeremy S. Millstone, Greve, Clifford, Wengel & Paras and Edward T. Clifford for Real Parties in Interest.

OPINION

PHELAN, P. J.—Typically, in a construction defect case brought before us, some but not all of the defendants have settled, the superior court has confirmed the settlement (Code Civ. Proc., § 877.6), and we are asked simply to review its determination that the settlement was within the "ballpark," as that term was used in *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 499-500 [213 Cal.Rptr. 256, 698 P.2d 159]. Our task this time is more difficult because here contractual indemnity rights connect the defendants, and two defendants procured insurance policies to cover a third defendant who did not settle. The settling defendants have attempted either to satisfy in advance or to cut off the nonsettling defendant's contractual indemnity claims and to short-circuit its insurance coverage by inducing the plaintiff to tailor its lawsuit to protect the settling defendants and their insurers.

The settlement raises two intertwined questions: (1) Have the settling defendants achieved their goals of undermining indemnity and insurance claims? and (2) Does the settlement qualify as a "good faith" settlement in spite of its objective of abridging the nonsettling defendant's indemnification claims and insurance coverage? Because the settlement and arguments made to this court leave us uncertain about how the case is to proceed against the nonsettling defendant, we are unable to answer these questions. We conclude that the superior court erred in confirming the settlement without (1) requiring a full explanation of how the agreement would affect

the action against the nonsettling defendant or (2) requiring that plaintiff make a firm commitment to limit its recovery against the nonsettling defendant.

### Facts and Procedural History

On April 21, 1988, Sutter Coast Hospital (Sutter), a Crescent City corporation, entered into a contract calling for Bobrow/Thomas & Associates (BTA) to plan, design, and manage construction of a hospital. BTA engaged John F. Otto, Inc. (Otto) to serve as prime contractor, and Otto hired Peninsula Floors, Inc. (PFI) to install the floors. Otto's agreement required Otto to indemnify BTA for damages caused in whole or in part by Otto's negligence or negligence of its subcontractors and not arising out of BTA's design work. PFI's subcontract required PFI to indemnify Sutter, BTA and Otto for injuries caused in whole or in part by PFI's negligence, but not for claims which arose from these indemnitees, own "sole negligence or willful misconduct." Otto and PFI each secured insurance, naming BTA as an additional insured.

After the hospital was completed, Sutter brought an action against BTA, Otto, and PFI for $1 million in damages caused by defective flooring. The complaint alleged that BTA failed to fully consider groundwater conditions and failed to design proper drainage facilities, causing moisture to collect under the hospital, to saturate the slab and cause the vinyl floors tiles and sheeting to "bubble, disbond, and fail" throughout the hospital. The complaint also alleged that Otto and PFI improperly installed the floor, failing to conform to the design and to the requirements of the construction contract. Sutter alleged that Otto and PFI failed to perform required moisture tests, ignored the results of the few tests they did perform, failed to disclose the existence of the moisture problem or its magnitude, failed to install a vapor barrier and/or base rock as required by the contract, failed to properly seal expansion joints, changed the slope of landscaped areas, and failed to build proper drainage facilities.

During mediation, before Sutter filed its complaint, Otto and PFI agreed to settle with Sutter. Otto's counsel, noting Otto's insurance carrier's concerns, immediately raised the issue of contractual indemnity between Otto and BTA. Counsel asked Sutter to narrow the focus of its lawsuit to negligent design and not seek to recover from BTA for its failure to discover construction problems. However, before the settlement agreement was signed, Sutter filed its complaint, alleging both negligent design and negligent construction.

Shortly thereafter, as recommended by the mediator, Otto and Otto's insurance carrier signed a settlement agreement offering Sutter $300,000,

and PFI agreed to pay Sutter $50,000. In consideration for these two offers, Sutter signed a release promising not to "seek recovery" from BTA "based on the architect's alleged negligent supervision of the construction work or any alleged derivative liability" of BTA based on the performance by Otto or PFI. Thereafter, Otto's insurance carrier advised BTA that it would not defend BTA or indemnify it for any damages recovered by Sutter, stating: "The only remaining claim against [BTA] is for professional negligence, and [BTA] does not qualify as an additional insured . . . under these circumstances." PFI's insurer also declined to defend BTA if the court approved the settlement.

Otto asked the superior court to confirm its and PFI's settlements, totaling $350,000. Otto noted there were "indications that repairs could be accomplished for approximately $500,000" and described liability as "hotly contested" because of conflicting evidence about whether moisture problems were caused by improper construction or by improper design.

After hearing, the court confirmed the joint settlement by Otto and PFI. This petition by BTA followed, challenging confirmation of the settlement. BTA initially assumed that the release would cut off BTA's indemnification rights and prevent its coverage as an additional insured under the settling defendants' policies. BTA argued that Sutter and the settling defendants had improperly colluded to produce this result.

We first requested opposition from Sutter and Otto,[1] soliciting comments upon the possibility that the settlement did not cut off BTA's indemnification rights or its insurance coverage under Otto's and PFI's policies. Sutter expressed the view that the settlement benevolently protected BTA from being blamed for construction defects. Sutter agreed with BTA's initial assumption that, if Sutter narrowed its complaint, BTA would lose indemnification rights and coverage as an additional insured.

Otto conceded that the court's order approving settlement did not "in and of itself, bar a claim for contractual indemnity," but then accepted BTA's assumption that Sutter's narrowing of the complaint would produce that effect. Impliedly, Otto took the position that Sutter's removal of defective construction issues from the complaint would prevent attributing any damages to construction negligence.

---

[1]PFI was not represented by counsel in the mediation and settlement and did not file a motion to confirm the settlement. Although its interests clearly are affected by the court's order, BTA did not name PFI as a real party in interest to the petition. However, PFI has not been prejudiced by BTA's oversight. Because Otto's and PFI's interests are identical, Otto's vigorous participation in these proceedings has fully protected PFI's interest in upholding the settlement.

Next, we issued a lengthy alternative writ order in which we noted that the main purpose of the requirement that Sutter narrow its complaint was to interfere with BTA's assertion of arguable rights to obtain indemnification and insurance coverage. We did so hoping that, after learning our reasoning, the superior court might vacate its ruling without requiring an opinion and a peremptory writ. The court elected instead to permit Otto to show cause, on the court's behalf, why we should not overrule its decision.

### Good Faith Settlement

■ "Under California law, when one of a number of tort defendants enters into a settlement agreement with a plaintiff, the nonsettling defendants' liability to the plaintiff is reduced by the amount of the settlement. [Citation.] If the nonsettling defendants believe that the settling defendant has not paid a fair share of the potential liability, and that therefore their liability has not been reduced by a sufficient amount, they may pursue a claim for equitable indemnity against the settling defendant, seeking to compel that defendant to bear an additional share of any liability that may be imposed on them. [Citation.] [¶] The Legislature has recognized, however, that a defendant is unlikely to settle with a plaintiff if the settlement will not end the defendant's involvement in the litigation and will leave it vulnerable to further liability to other defendants. [Citation.] Accordingly, the Legislature has provided that if a trial court determines a settlement was made in 'good faith,' a settling defendant is relieved of any further liability to the nonsettling defendants for equitable indemnity. [Citations.] [¶] Under this general framework, the trial court's good faith determination plays a key role in harmonizing the objective of encouraging settlement with the objective of promoting a fair apportionment of loss among multiple tortfeasors. [Citations.] [¶] A trial court's decision that a settlement was made in good faith, however, does not absolve a settling defendant from a subsequent indemnification claim in all circumstances. For example, when the settling defendant has previously entered into a contractual agreement to indemnify a nonsettling defendant, a settlement—even if in good faith—does not relieve the settling defendant from performing the contractual indemnification obligations. [Citation.]" (*Bay Development, Ltd.* v. *Superior Court* (1990) 50 Cal.3d 1012, 1018-1019 [269 Cal.Rptr. 720, 791 P.2d 290], fns. omitted (*Bay Development*).)

### BTA's Contractual Indemnification Rights

■ *Bay Development* and cases cited therein assure us that BTA's contractual indemnification rights, if any exist, survived Sutter's settlement of its claims against Otto and PFI and the court's confirmation of the

settlement. We are less sure, however, whether Sutter's narrowing of its theory of recovery has effectively accomplished what settling the claims could not alone have done. With the narrowed claim, according to Otto, if Sutter recovers anything against BTA, it will do so solely because of BTA's design negligence, and BTA will be unable to obtain indemnification from Otto or PFI. Otto suggests that it and PFI have "indemnified" BTA in advance by requiring Sutter to drop any allegations that might lead to BTA's derivative liability. Otto maintains that BTA cannot ask for more than to have Otto and PFI pay in advance for any such claims and eliminate them from Sutter's lawsuit.

The settlement agreement is ingenious, as are Otto's arguments to this court. The settlement seeks to partition Sutter's injury into a defective construction injury and a design injury and to resolve the construction injury by settlement, leaving the design injury for Sutter's pending lawsuit against BTA. If Sutter's injury were divisible, as might be injury which included both flooring damage and damages caused by defective wiring, this approach might work. Sutter could settle with the flooring defendants and then proceed against BTA for problems connected with the design of the wiring. BTA could not then hold the flooring defendants responsible for any part of the Sutter's recovery in the continuing lawsuit against BTA.

The injury here is not divisible, however. Sutter seeks $1 million in reimbursement costs for repairing the flooring and for installing a drainage system. Sutter states that the flooring failed because of moisture caused by "a combination of faulty architectural design and poor construction." Under California law, defendants may be held jointly and severally liable for damages when there is "one indivisible injury caused by two or more parties." (*May* v. *Miller* (1991) 228 Cal.App.3d 404, 409 [278 Cal.Rptr. 341]; *Greathouse* v. *Amcord, Inc.* (1995) 35 Cal.App.4th 831, 840 [41 Cal.Rptr.2d 561].) Unlike the plaintiff in *Hoch* v. *Allied-Signal, Inc.* (1994) 24 Cal.App.4th 48 [29 Cal.Rptr.2d 615], who agreed to claim only noneconomic damages, Sutter cannot divide its jointly caused singular injury into two components (*id.* at pp. 62, 67). Where, as here, some joint tortfeasors[2] settle, nonsettling defendants may be held liable for all the damages not satisfied by pretrial settlements, without regard to how a jury

---

[2]Otto offers a suggestion that under California law architects and contractors are not joint tortfeasors because they have distinct and separate duties to the owner. The cases Otto cites do not support such a broad and illogical rule. Only one of the three cited cases involved an architect and a contractor. In that case the architect successfully moved to sever the case against him from the homeowners' case against the builder, then the architect reversed field and argued that the defendants were joint tortfeasors and that the release secured by the builder by satisfying the earlier judgment released him as well. (*Alexander* v. *Hammarberg* (1951) 103 Cal.App.2d 872, 874-875 [230 P.2d 399].) The *Alexander* court found that the

might have assigned fault among the defendants if none had settled. (*Id.* at p. 65.)

█ If trial against BTA is to proceed under these well-established principles, BTA will be held liable for all of Sutter's proven damages, less a $350,000 setoff, if Sutter proves any degree of design negligence and causation and if BTA cannot prove that Sutter contributed in some way to its own injury. Assuming, for example, $1 million in damages and no proof that Sutter contributed to its own injury, Sutter would recover $650,000 from BTA by proving only that the damages were caused in some part by negligent design. Because BTA would be the sole defendant, the court would have no reason to determine comparative fault or to apportion damages.

If BTA were in fact 65 percent responsible· for Sutter's injury, such an award would be commensurate with BTA's fault. On the other hand, if BTA's negligence were in fact only 10 percent responsible for the damages, BTA would have been overcharged $550,000 due to the settlements by Otto and PFI. In the latter case, BTA would have viable claims for contractual indemnification against Otto and PFI.[3] If the settling parties intended Sutter's continuing action against BTA to proceed under these well-established principles and also intended the settlement to cut off BTA's contractual indemnity rights, then they attempted to harm BTA. They sought to substitute their own assessment of comparative fault (and the mediator's) for BTA's proof of actual fault and BTA's enforcement of contractual indemnity provisions.[4] They sought not only to cut off *equitable* indemnity rights, as any confirmed settlement would do, but to prevent assertion of *contractual* indemnity claims, which should have survived the settlement.

Otto's insistence that the settlement benefits BTA and other comments by Otto suggest that Otto may have a different view of how Sutter's trial against

---

architect had waived or was estopped from making his new argument. The court then contributed dicta explaining that for the defendants to be joint tortfeasors they had to be joined in purpose or design. (*Id.* at p. 879.) Whatever impact this dicta may have had in 1951, it has little force today. Even defendants not considered joint tortfeasors in the traditional sense come within the scope of Code of Civil Procedure sections 877 and 877.6 when plaintiffs claim they are liable for the same tort. The joint tortfeasor concept has taken on a new meaning under current principles of comparative fault, apportionment of damages and releases that no longer discharge all joint tortfeasors. (See *Lopez* v. *Blecher* (1983) 143 Cal.App.3d 736, 740-741 [192 Cal.Rptr. 190]; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, §§ 58-60, pp. 118-121).

[3] In such a situation, BTA might also have a claim for coverage as an additional insured under Otto's and PFI's policies. However, whether coverage would exist is beyond the scope of this petition as it involves BTA's rights against nonparties, rights that depend upon interpreting the insurance policies.

[4] Such conduct would be comparable to, and would suffer the same vice as, the nonadverse allocation of the settlement in *Peter Culley & Associates* v. *Superior Court* (1992) 10 Cal.App.4th 1484, 1497-1498 [13 Cal.Rptr.2d 624].)

BTA is to be conducted. Otto may believe that the court will award Sutter damages only according to BTA's actual responsibility. Throughout its opposition brief, Otto stated its desire to ensure that BTA would not be exposed to any liability for construction problems and its understanding that Sutter would be suing BTA only for damages caused by negligent design. In its return to the alternative writ, Otto stated that BTA would be allowed to introduce all the evidence it wanted that the damages were caused by Otto and PFI. Otto also predicted that the jury would be told about the settlement. ██ Otto did not describe how the trial would be conducted, but these comments suggest that Otto believed that the trier of fact would allocate fault among the original defendants, including those who settled, and that the court would somehow limit Sutter's recovery to damages actually attributable to BTA's design.[5]

 If the settling parties contemplated trial procedures that would lead to a determination of each original defendant's actual fault and a judgment against BTA limited to damages actually caused by its design negligence, then Otto may be correct that the settlement did not injure BTA's contractual rights. However, if this is what they contemplated, the settlement did not reveal their thoughts. Sutter's release stated only that Sutter agreed that it would not "seek recovery in said action against the architect based on the architect's alleged negligent supervision of the construction work or any alleged derivative liability of the architect . . . ." It did not state that Sutter agreed to waive its right to full compensation from BTA for all proven damages not previously paid in settlements or that Sutter agreed the court could determine comparative fault among all the original defendants and allocate damages according to fault.[6]

 A party seeking a court order confirming a settlement must advise the court and all other parties of all material terms of the settlement. (See *Alcal Roofing & Insulation* v. *Superior Court* (1992) 8 Cal.App.4th 1121,

---

[5]Such procedures would not be unprecedented. If defendants are not jointly liable for all damages, such as for noneconomic damages, a jury may consider evidence against settling defendants and assess the comparative fault of all defendants in order to prevent the nonsettling defendants from overpaying. (See *Roslan* v. *Permea, Inc.* (1993) 17 Cal.App.4th 110, 111-112 [21 Cal.Rptr.2d 66].) The court also has discretion to instruct a jury to make an appropriate reduction for a settlement already paid to the plaintiff. (See *May* v. *Miller, supra,* 228 Cal.App.3d at p. 409.) A court may advise the jury about a settlement in order to explain possible bias of a party. (Cf. *Everman* v. *Superior Court* (1992) 8 Cal.App.4th 466, 473 [10 Cal.Rptr.2d 176].) Advising the jury here could help to explain why Sutter no longer was blaming construction mistakes for its injury.

[6]Sutter's agreement, as stated in the release, is inherently suspect. Sutter gave up next to nothing by limiting its theory against BTA because it could recover fully from BTA by showing any degree of design negligence. (Cf. *Greathouse* v. *Amcord, Inc., supra,* 35 Cal.App.4th at p. 841.)

1129 [10 Cal.Rptr.2d 844].) In this case, the parties' unusual plans for trying the case, if they had such plans, were material terms of the settlement. If the settling parties contemplated an abnormal trial, with the jury learning about the settlement, BTA being permitted to allocate fault to others, not merely to disprove its own responsibility, and Sutter giving up its right to recover all proven damages, their settlement should have so stated. Failing that, the settling parties should have informed the court and BTA on the record of their intentions, and Sutter should have made a binding promise to the court to waive its right to recover fully. Without such an explanation or commitment from Sutter, the superior court could not properly have accepted Otto's assertion that the settlement satisfied BTA's contractual indemnity rights instead of improperly seeking to thwart them.[7]

We conclude that the court erred in confirming the settlement. This does not mean the settlement itself is void. Upon presentation of the full details of the settlement, including how the continuing trial is to proceed and what commitments Sutter has made about its recovery, the court may confirm the settlement again if it meets the requirements for good faith. (*Alcal Roofing & Insulation* v. *Superior Court, supra*, 8 Cal.App.4th at p. 1129.)[8]

Let a peremptory writ of mandate issue directing the Del Norte County Superior Court to vacate its order confirming the settlement.

Corrigan, J., and Parrilli, J., concurred.

---

[7]Full disclosure of how the trial was to proceed against the remaining defendant and what kind of award might be made would also have assisted the insurers in assessing their duty to defend and to indemnify BTA, who may have been an "additional insured" remaining in the case.

[8]In keeping with the flexibility accorded courts in this area of law (*Erreca's* v. *Superior Court* (1993) 19 Cal.App.4th 1475, 1504-1505 [24 Cal.Rptr.2d 156]), the superior court may take appropriate action to ensure that the settlement achieves the purposes of the statute (cf. *Regan Roofing Co.* v. *Superior Court* (1994) 21 Cal.App.4th 1685, 1715 [27 Cal.Rptr.2d 62]). Therefore, even if the court finds that the settling parties originally intended procedures that would interfere with BTA's contractual indemnity claims, it may confirm the settlement if it is otherwise appropriate and if the settling parties now stipulate to procedures that fully protect BTA's rights.